Argued and submitted November 4, 2009, affirmed June 16,
petition for review allowed October 21, 2010 (349 Or 173)

Cynthia Townsley WILLIS,
*Petitioner-Respondent,*

*v.*

Michael WINTERS,
in his official capacity as
Sheriff of Jackson County,
*Respondent-Appellant.*

Jackson County Circuit Court
072755Z7; A139875

234 P3d 141

Benjamin M. Bloom and Elmer M. Dickens, Jr., argued the cause for appellant. With Benjamin M. Bloom on the briefs was Hornecker, Cowling, Hassen & Heysell, L.L.P.

John C. Lucy, IV, and Leland R. Berger argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

WOLLHEIM, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## WOLLHEIM, P. J.

Respondent, the Jackson County Sheriff, appeals a judgment of the circuit court that ordered him to renew a concealed handgun license issued to petitioner, a medical marijuana user. The sheriff concedes that petitioner met the requirements for issuance of a concealed handgun license set forth in ORS 166.291. He nevertheless asserts that Oregon's concealed handgun licensing statutes are preempted by federal law in this instance, because "an unlawful user * * * of any controlled substance" cannot lawfully possess a firearm under 18 USC section 922(g) of the federal Gun Control Act.[1] The circuit court rejected the sheriff's preemption argument and ordered him to issue a renewal of petitioner's concealed handgun license. We agree with the circuit court's conclusion that federal law does not preempt this state's concealed handgun licensing statutes, and we therefore affirm.

The relevant facts are few and undisputed. In May 2007, petitioner applied to renew her expired concealed handgun license. The criteria for renewal of a concealed handgun license are, with the exception of submitting fingerprints and character references, the same as those for issuance of the license in the first instance under ORS 166.291. ORS 166.295(1)(a) ("A concealed handgun license is renewable by repeating the procedures set out in ORS 166.291 and 166.292, except for the requirement to submit fingerprints and provide character references."). ORS 166.291, in turn, provides that the sheriff of a county, "upon a person's application for an Oregon concealed handgun license, [and] upon receipt of the appropriate fees and after compliance with the procedures set out in this section, *shall issue the person a concealed handgun license*" if the person meets certain enumerated criteria.[2] (Emphasis added.)

---

[1] For ease of reference, we refer to the Gun Control Act of 1968 and its subsequent amendments as the "federal Gun Control Act."

[2] Under ORS 166.291, the applicant must be a person who:

"(a) * * * Is a citizen of the United States [or legal resident alien who can document continuous residency and has officially declared intent to acquire citizenship];

"(b) Is at least 21 years of age;

"(c) Is a resident of the county;

Petitioner satisfied each of the enumerated criteria in ORS 166.291. Nonetheless, the sheriff, acting through one of his sergeants, denied the application. The basis for denying the application was petitioner's response to a series of questions, which the sheriff had included in the application on his own initiative, inquiring about the use of controlled substances.[3] Petitioner reported that she used marijuana on a regular basis, as authorized by her doctor. During an evidentiary hearing, petitioner testified that she does, in fact, use marijuana, pursuant to a card issued in accordance with Oregon's Medical Marijuana Act, ORS 475.300 to 475.346.

---

"(d) Has no outstanding warrants for arrest;

"(e) Is not free on any form of pretrial release;

"(f) Demonstrates competence with a handgun by any one of [certain enumerated methods, such as completion of certain courses] * * *

"(g) Has never been convicted of a felony or found guilty, except for insanity under ORS 161.295, of a felony;

"(h) Has not been convicted of a misdemeanor or found guilty, except for insanity under ORS 161.295, of a misdemeanor within the four years prior to the application;

"(i) Has not been committed to the Oregon Health Authority under ORS 426.130;

"(j) Has not been found to be mentally ill and is not subject to an order under ORS 426.130 that the person be prohibited from purchasing or possessing a firearm as a result of that mental illness;

"(k) Has been discharged from the jurisdiction of the juvenile court for more than four years if, while a minor, the person was found to be within the jurisdiction of the juvenile court for having committed an act that, if committed by an adult, would constitute a felony or a misdemeanor involving violence, as defined in ORS 166.470;

"(L) Has not been convicted of an offense involving controlled substances or participated in a court-supervised drug diversion program, [with enumerated exceptions] * * *

"(m) Is not subject to a [stalking] citation * * * or an order issued under [stalking prevention laws];

"(n) Has not received a dishonorable discharge from the Armed Forces of the United States; and

"(o) Is not required to register as a sex offender in any state."

[3] ORS 166.291(4) provides that "[a]pplication forms for concealed handgun licenses shall be supplied by the sheriff upon request." The statute then provides that "[t]he forms shall be uniform throughout the state" and in "substantially the * * * form" of a model application set out in the statute. *Id.* The model form includes questions about prior convictions involving controlled substances and participation in court supervised diversion programs but does not otherwise inquire about the use of controlled substances. Petitioner does not directly challenge the sheriff's deviation from the model form in this case.

After the sheriff denied her application for renewal, petitioner filed a petition for judicial review of that decision. In petitioner's view, the sheriff was *required* to renew—in the words of ORS 166.291, "shall issue"—her concealed handgun license because she satisfied each of the listed criteria.[4] The sheriff, in response, did not dispute petitioner's reading of Oregon's concealed handgun licensing statutes, in particular, ORS 166.291. Instead, the sheriff argued that his statutory obligation to issue the license was preempted by federal law—namely, 18 USC section 922, of the federal Gun Control Act. Under that law,

> "[i]t shall be unlawful for any person * * * who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) * * * to ship or transport in interstate or foreign commerce, *or possess in or affecting commerce*, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

18 USC § 922(g) (emphasis added). According to the sheriff, issuing a concealed handgun license to a person who admittedly uses marijuana, a Schedule I controlled substance under federal law, 21 USC section 801, would frustrate the purpose of the federal Gun Control Act.

The circuit court rejected the sheriff's preemption argument. The court reasoned that the concealed handgun licensing statutes "provide a defense to a state prosecution for carrying a concealed weapon. [They] do not purport to overrule, or in any other way address, who may lawfully possess a weapon under *federal* law." (Emphasis in original.) "Thus," the court ruled, "the state and federal statutes are not in clear and direct conflict, and preemption therefore does

---

[4] Under ORS 166.293(2), a sheriff may deny a concealed handgun license even though the criteria in ORS 166.291(1) are met, if the sheriff

"has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence."

That statute is not at issue in this case.

not apply." The court then entered a judgment ordering the sheriff to reinstate petitioner's concealed handgun license.

The sheriff now appeals that judgment, arguing once again that federal law preempts Oregon's concealed handgun licensing statutes under these circumstances. The sheriff advances two arguments in that regard. First, he contends that Oregon's concealed handgun licensing statutes create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting legislation regarding controlled substances and firearms. Second, he argues that federal law prohibits him from making any misleading statement likely to deceive a firearms dealer regarding petitioner's right to possess a handgun, *see* 18 USC § 922(a)(6), and that by issuing her a concealed handgun license, he might violate that law by misleading a dealer to believe that petitioner can legally possess a handgun.

■    We begin with the sheriff's primary argument—that Oregon's concealed handgun licensing statutes are preempted in this case by section 922(g) of the federal Gun Control Act. That provision of federal law, as quoted above, prohibits "an unlawful user * * * of any controlled substance" from "possess[ing] in or affecting commerce * * * any firearm or ammunition[.]" Oregon's concealed handgun licensing statutes, meanwhile, require the sheriff to issue a concealed handgun license if certain criteria are met, without regard to whether the person is "an unlawful user * * * of any controlled substance" within the meaning of section 922(g) of the federal Gun Control Act.

■    The relationship between the federal Gun Control Act and state law is expressly addressed in section 927 of the federal act:

> "No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together."

So, by the terms of the federal Gun Control Act, states remain free to pass laws on the "same subject matter" as the

federal act unless there is a "direct and positive conflict" between the state and federal laws "so that the two cannot be reconciled or consistently stand together."

■     The Oregon Supreme Court recently analyzed federal preemption under a similar preemption provision in *Emerald Steel Fabricators, Inc. v. BOLI*, 348 Or 159, 230 P3d 518 (2010) (*Emerald Steel*), thereby charting the course for our analysis. In *Emerald Steel*, the court explained that, when a federal law contains a preemption provision like the one at issue here,[5] the question is one of "implied preemption." 348 Or at 175 (citing *Wyeth v. Levine*, ___ US ___ , 129 S Ct 1187, 1196-1200, 173 L Ed 2d 51 (2009)). Under the implied preemption test, the court asks whether there is an "actual conflict" between state and federal law, which can occur in either of two circumstances: One, when it is physically impossible to comply with both state and federal law, or, two, when state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " 348 Or at 175 (quoting *Freightliner Corp. v. Myrick*, 514 US 280, 287, 115 S Ct 1483, 131 L Ed 2d 385 (1995) (internal quotation marks omitted)).

Here, the sheriff makes no argument that it is "physically impossible" to comply with both ORS 166.291 and section 922(g) of the federal Gun Control Act, and for good reason: It is not, in fact, physically impossible to comply with the Oregon law and the federal law. Not only do the statutes address conduct by two different persons—issuance of a permit by the sheriff under state law, versus possession of a firearm by the controlled substance user under the federal law— but a controlled substance user, even if issued a concealed handgun license, might never actually obtain a firearm. *Cf. Emerald Steel*, 348 Or at 176 (explaining that it is not physically impossible to comply with inconsistent state and federal

---

[5] In *Emerald Steel*, the preemption provision at issue, section 903 of the Controlled Substances Act, authorized states to pass laws "on the same subject matter" as the Controlled Substances Act unless there is a "positive conflict" between state and federal law "so that the two cannot consistently stand together." 348 Or at 174-75 (quoting 21 USC section 903). The court drew on the United States Supreme Court's analysis of the preemption provision at issue in *Wyeth*—a preemption provision that was virtually identical to section 927 of the federal Gun Control Act. *See* 348 Or at 175 n 15 (describing "direct and positive conflict" preemption provision in *Wyeth*).

laws regarding marijuana use, because a person can comply with both by refraining from any use of marijuana; and explaining that implied preemption cases have typically turned on the second prong of the analysis, as the "physical impossibility" prong has grown "vanishingly narrow"). Rather, the sheriff's argument—and the real debate in this case—is whether Oregon's concealed handgun licensing statutes stand as an obstacle to the accomplishment and execution of the federal Gun Control Act.

In *Emerald Steel*, a case involving the intersection between the federal Controlled Substances Act and Oregon's Medical Marijuana Act, the Supreme Court explored in detail that second prong of the implied preemption analysis. After canvassing the pertinent decisions of the United States Supreme Court—particularly *Barnett Bank v. Nelson*, 517 US 25, 116 S Ct 1103, 134 L Ed 2d 237 (1996), and *Michigan Canners & Freezers v. Agricultural Bd.*, 467 US 461, 104 S Ct 2518, 81 L Ed 2d 399 (1984)—our Supreme Court explained:

> "*Affirmatively authorizing a use that federal law prohibits stands as an obstacle to the implementation and execution of the full purposes and objectives of the Controlled Substances Act. Michigan Canners*, 467 US at 478. To be sure, state law does not prevent the federal government from enforcing its marijuana laws against medical marijuana users in Oregon if the federal government chooses to do so. But the state law at issue in *Michigan Canners* did not prevent the federal government from seeking injunctive and other relief to enforce the federal prohibition in that case. Rather, state law stood as an obstacle to the enforcement of federal law in *Michigan Canners* because state law affirmatively authorized the very conduct that federal law prohibited, as it does in this case.

> "To the extent that ORS 475.306(1) affirmatively authorizes the use of medical marijuana, federal law preempts that subsection, leaving it 'without effect.' *See Cipollone v. Liggett Group, Inc.*, 505 US 504, 516, 112 S Ct 2608, 120 L Ed 2d 407 (1992) ('[S]ince our decision in *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." '). Because ORS 475.306(1) was not enforceable when employer discharged employee, no enforceable state law either authorized employee's use of

marijuana or excluded its use from the 'illegal use of drugs,' as that phrase is defined in ORS 659A.122(2) and used in ORS 659A.124. It follows that BOLI could not rely on the exclusion in ORS 659A.122(2) for 'uses authorized * * * under other provisions of state * * * law' to conclude that medical marijuana use was not an illegal use of drugs within the meaning of ORS 659A.124."

*Emerald Steel*, 348 Or at 178 (emphasis added).

In this case, the sheriff contends that, like the preempted provision of Oregon's Medical Marijuana Act, the statute mandating issuance of a concealed handgun license, ORS 166.291, "purports to authorize what federal law prohibits." The sheriff reasons as follows: As a regular user of marijuana, petitioner is an "unlawful user" of a "controlled substance" for purposes of the federal Gun Control Act, and under federal law, petitioner is prohibited from possessing a firearm in or affecting commerce. 18 USC § 922(g). If petitioner cannot lawfully possess a firearm, she certainly cannot lawfully possess a *concealed* handgun. Accordingly, the sheriff argues, "[a]ny state law, including ORS 166.291 *et seq*, which purports to authorize what federal law prohibits is preempted under both the federal statute and the Supremacy Clause, Article VI of the United States Constitution." Said another way, "The state law which purports to authorize [petitioner] to carry a concealed weapon contravenes the federal statute which prohibits [petitioner], as an unlawful user of a controlled substance, from possessing a weapon."

■　The linchpin of the sheriff's preemption argument is that Oregon's concealed handgun licensing statutes authorize a licensee to possess a concealed handgun. That is an oversimplified—and incorrect—characterization of the right to bear arms in general, and of the effect of the concealed handgun licensing statutes in particular. The right to possess a handgun does not flow from Oregon's concealed handgun licensing statutes; the right to carry a firearm is constitutional in origin. Or Const, Art I, § 27 ("The people shall have the right to bear arms for the defence of themselves, and the State, but the Military shall be kept in strict subordination to the civil power[.]"); *see generally State v. Hirsch*, 338 Or 622, 114 P3d 1104 (2005) (tracing the right to bear arms in Oregon). Throughout the state's history, the legislature has

placed a number of limitations on that right. *Id.* at 652 ("The legislature did not act to prohibit the carrying of concealed weapons until 1885 and did not act to limit the possession of firearms by felons—or the possession of certain arms by any persons—until 1925.").[6] One set of present limitations can be found in ORS 166.250. That statute, which concerns unlawful possession of a firearm, provides, in part:

"(1) Except as otherwise provided in this section or ORS 166.260, 166.270, 166.274, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) *Carries any firearm concealed upon the person*;

"(b) Possesses a handgun that is concealed and readily accessible to the person within any vehicle; or

"(c) Possesses a firearm and:

"(A) Is under 18 years of age;

"(B)(i) While a minor, was found to be within the jurisdiction of the juvenile court for having committed an act which, if committed by an adult, would constitute a felony or a misdemeanor involving violence, as defined in ORS 166.470; and

"(ii) Was discharged from the jurisdiction of the juvenile court within four years prior to being charged under this section;

"(C) Has been convicted of a felony;

"(D) Was committed to the Oregon Health Authority under ORS 426.130;

"(E) Was found to be mentally ill and subject to an order under ORS 426.130 that the person be prohibited from purchasing or possessing a firearm as a result of that mental illness; or

"(F) Has been found guilty except for insanity under ORS 161.295 of a felony."

ORS 166.250 (emphasis added).

---

[6] *See also id.* at 651 (noting that "[i]n 1869, 10 years after the adoption of the Oregon Constitution, the legislature enacted a statutory right as to certain firearms for white male citizens, with no exceptions").

■ ORS 166.291 to 166.295, the statutes pertaining to concealed handgun licenses, do not affirmatively grant a licensee the right to carry a handgun. Rather, as ORS 166.250(1)(a) exemplifies, the legal effect of a concealed handgun license is to exempt the licensee from state laws that would otherwise prohibit *concealment* of that firearm. *See, e.g.*, ORS 166.173(2)(c) (city or county ordinances to regulate, restrict, or prohibit the possession of loaded firearms in public places as defined in ORS 161.015 do not apply to "[a] person licensed to carry a concealed handgun"); ORS 166.260(1)(h) (ORS 166.250 does not apply to "[a] person who is licensed under ORS 166.291 and 166.292 to carry a concealed handgun"); ORS 166.370(3)(d) (prohibition on possession of firearm in public building in ORS 166.370(1) does not apply to "[a] person who is licensed under ORS 166.291 and 166.292 to carry a concealed handgun"); ORS 166.663(2)(g) (statutory prohibition on casting artificial light while in possession of certain weapons does not apply when "the person has been issued a license under ORS 166.291 and 166.292 to carry a concealed weapon"). Thus, a concealed handgun licensee—marijuana user or not—is not affirmatively authorized to carry a firearm by way of Oregon's concealed handgun licensing statutes; what the licensing statutes do is provide an exemption from state criminal liability for concealing a handgun that the licensee independently has a right to possess.

The distinction between a statute that exempts certain conduct from state criminal liability and one that affirmatively authorizes conduct is not purely semantic, as the court's opinion in *Emerald Steel* demonstrates. The state law at issue in that case, ORS 475.306(1), affirmatively authorized a medical marijuana cardholder to "engage in * * * the medical use of marijuana." Under a different provision of Oregon's Medical Marijuana Act, ORS 475.309, a cardholder was also exempted from state criminal prosecution for the possession, distribution, and manufacture of marijuana, provided certain conditions were met. The Supreme Court held that the former was preempted because it authorized what federal law prohibited. 348 Or at 178. However, the court was careful to limit the scope of its holding in that respect: "[W]e do not hold that federal law preempts the other sections of

the Oregon Medical Marijuana Act *that exempt medical marijuana use from criminal liability.*" 348 Or at 172 n 12 (emphasis added).

Indeed, in response to the dissent, the court further explored the differences between state laws that authorize what federal law prohibits and those state laws that merely exempt federally prohibited conduct from state criminal liability:

> "As noted, the dissent also advances what appears to be an alternative ground for its position. The dissent reasons that ORS 475.306(1) does not affirmatively authorize the use of medical marijuana; it views that subsection instead as part of a larger exemption of medical marijuana use from state criminal laws. The dissent's reasoning is difficult to square with the text of ORS 475.306(1). *That subsection provides that a person holding a registry identification card 'may engage' in the limited use of medical marijuana. Those are words of authorization, not exemption.* Beyond that, if ORS 475.306(1) were merely part of a larger exemption, then no provision of state law would authorize the use of medical marijuana. If that were true, medical marijuana use would not come within one of the exclusions from the 'illegal use of drugs,' as that phrase is defined in ORS 659A.122, and the protections of ORS 659A.112 would not apply to employee. *See* ORS 659A.124 (so providing).
>
> "Another thread runs through the dissent. It reasons that, as a practical matter, authorizing medical marijuana use is no different from exempting that use from criminal liability. It concludes that, if exempting medical marijuana use from criminal liability is not an obstacle to the accomplishment of the purposes of the Controlled Substances Act and is thus not preempted, then neither is a state law authorizing medical marijuana use. The difficulty with the dissent's reasoning is its premise. It presumes that a law exempting medical marijuana use from liability is valid because it is not preempted. As the Attorney General's opinion explained, however, *Congress lacks the authority to compel a state to criminalize conduct, no matter how explicitly it directs a state to do so. When, however, a state affirmatively authorizes conduct, Congress has the authority to preempt that law and did so here. The dissent's reasoning fails to distinguish those two analytically separate constitutional principles.*"

*Emerald Steel*, 348 Or at 185-86 (emphasis added; footnote omitted).

ORS 166.291, although denominated a "licensing" statute, plainly operates to provide an exemption from state criminal liability. It does not contain language that purports to independently authorize possession of a handgun. In fact, read in isolation, ORS 166.291 does nothing but state that the license shall issue; and none of the concealed handgun licensing statutes says anything about the legal effect of the license. It is only when read in conjunction with other statutes, such as ORS 166.250, that it becomes clear what legal effect the license has—exemption from state criminal prosecution for concealing a weapon and from related criminal statutes. In that way, ORS 166.291 is similar to those portions of the Oregon Medical Marijuana Act that exempt medical marijuana users from state criminal liability, and it is dissimilar to the preempted provision of that act, ORS 475.306(1), which affirmatively authorized conduct that federal law prohibited.

In sum, the circuit court correctly concluded that Oregon's concealed handgun licensing statutes are not preempted by the federal Gun Control Act. The concealed handgun licensing statutes do not affirmatively authorize controlled substance users to possess handguns; rather, they exempt a licensee from state criminal liability for the possession of a concealed handgun.

We likewise reject the sheriff's alternative contention that, "by granting an unlawful user of a controlled substance a concealed handgun [license] under state law, [the sheriff] potentially violates federal law himself." The sheriff's argument depends on the interplay between two provisions of 18 USC section 922. First, the sheriff points to section 922(a)(6), which makes it unlawful for any person "knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive" an importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of a firearm or ammunition under the provisions of the federal Gun Control Act.

Second, the sheriff directs us to section 922(t), the provision that, according to him, makes it likely that a firearms dealer, manufacturer, or importer would rely upon and be deceived by the issuance of an Oregon concealed handgun license to a controlled substances user. Section 922(t)(1) requires a licensed importer, manufacturer, or dealer of firearms to follow certain procedures, including contacting the "national instant criminal background check system," before transferring a firearm to a person who is not licensed under the federal law. Paragraph (3) of the statute then provides an exception to that process:

"Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if—

"(A)(i)   such other person has presented to the licensee a permit that—

"(I)   allows such other person to possess or acquire a firearm; and

"(II)   was issued not more than 5 years earlier by the State in which the transfer is to take place; and

"(ii)   the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law[.]"

Under section 922(t)(3), the sheriff contends, a concealed handgun license "is an affirmative assurance that a law enforcement agency has conducted a background check and determined that the applicant is not prohibited from possessing a firearm," thereby allowing the otherwise federally required background check for purchasing a firearm to be waived. Consequently, the sheriff argues, "if [he] were to issue a concealed handgun license to [petitioner], an unlawful user of controlled substances, the handgun license would be representation from the Sheriff that [petitioner] is not prohibited under federal law from possessing a firearm."

■   The sheriff, as petitioner and the circuit court have correctly pointed out, misreads section 922(t)(3). First, the sheriff's shorthand description of section 922(t)(3)—that it

provides an exception to federal background check requirements where the local law enforcement officials have conducted a background check—is inaccurate. The exception set forth in section 922(t)(3) is not triggered simply because local law enforcement officials have conducted a "background check" before issuing a concealed handgun license; rather, the state government official must have "verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law." That is a different requirement from a "background check."

But more to the point, section 922(t)(3) does not impose any obligations on the sheriff with respect to the issuance of a concealed handgun license. The statute does not require him to verify whether possession of a firearm "would be in violation of law." Rather, the law provides certain firearms importers, manufacturers, and dealers with an exception to national instant background check requirements *if the law of Oregon* requires the sheriff to first determine whether the applicant's possession "would be in violation of law." (And on that point, the sheriff meets himself coming and going; his complaint about ORS 166.291 is that it requires him to issue a concealed handgun license even though the applicant's possession of the firearm would be in violation of federal law.)

In sum, we are not persuaded that the sheriff is being forced to violate—or even potentially violate—any federal law by issuing a concealed handgun license pursuant to Oregon's concealed handgun licensing statutes. Likewise, there is no "direct conflict" between those licensing statutes—which only provide an exemption from state criminal liability—and the federal Gun Control Act. For those reasons, we affirm the judgment of the circuit court.

Affirmed.