Argued and submitted March 3, decisions of Court of Appeals affirmed; judgments of circuit courts affirmed May 19, 2011

Cynthia Townsley WILLIS,
*Petitioner-Respondent,*
*Respondent on Review,*

*v.*

Michael WINTERS,
in his official capacity as Sheriff of Jackson County,
*Respondent-Appellant,*
*Petitioner on Review.*

(CC 07-2755-Z7; CA A139875; SC S058645 (Control))

Paul SANSONE,
*Plaintiff-Respondent,*
*Respondent on Review,*

*v.*

Rob GORDON,
in his official capacity as the Sheriff of Washington County,
*Respondent-Appellant,*
*Petitioner on Review.*

Steven SCHWERDT,
*Plaintiff-Respondent,*
*Respondent on Review,*

*v.*

Rob GORDON,
in his official capacity as the Sheriff of Washington County,
*Respondent-Appellant,*
*Petitioner on Review.*

Lee WALLICK,
*Plaintiff-Respondent,*
*Respondent on Review,*

*v.*

Rob GORDON,
in his official capacity as the Sheriff of Washington County,
*Respondent-Appellant,*
*Petitioner on Review.*
(CC C073809CV, C0073810CV, C073811CV;
CA A139802; SC S058642)

253 P3d 1058

Elmer M. Dickens, Senior Assistant County Counsel, Washington County Counsel, Office of County Counsel, Hillsboro, argued the cause and filed the briefs for petitioner on review Robert Gordon, Sheriff of Washington County.

James R. Kirchoff, Jackson County Counsel, Medford, argued the cause for petitioner on review Michael Winters. With him on the brief was G. Frank Hammond.

Leland R. Berger, Portland, argued the cause for respondents on review Cynthia Townsley Willis, Paul Sansone, Steven Schwerdt, and Lee Wallick. With him on the brief was John C. Lucy.

Denise G. Fjordbeck, Attorney-in-Charge Civil/Administrative Appeals, Salem, filed a brief on behalf of *amicus curiae* State of Oregon. With her on the brief were John R.

Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Margaret H. Leek Leiberan, Jensen & Leiberan, Beaverton, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

In these consolidated cases, the sheriffs of Jackson and Washington counties withheld concealed handgun licenses from persons who met all of the statutory conditions for issuance of such licenses, but who admitted to regular use of medical marijuana pursuant to registry identification cards issued under the Oregon Medical Marijuana Act, ORS 475.300 to 475.346. When the sheriffs' actions were challenged in court, the sheriffs responded that, to the extent that Oregon's concealed handgun licensing scheme does not concern itself with the applicants' use of medical marijuana, it is preempted by a *federal* prohibition on the possession of firearms by persons who, under *federal* law, are "unlawful user[s] * * * of a[ ] controlled substance." 18 USC § 922(g)(3). Both trial courts and, later, the Court of Appeals, rejected that preemption argument and held that the concealed handgun licenses were wrongfully withheld. We allowed the sheriffs' petitions for review and now add this court's voice to the lower courts': We hold that the Federal Gun Control Act does *not* preempt the state's concealed handgun licensing statute and, therefore, the sheriffs must issue (or renew) the requested licenses.

Before turning to the facts of the two cases, we describe some of the relevant statutory background. At the outset, we observe that Oregon's concealed handgun licensing statute does not purport to regulate the *possession* of firearms.[1] Rather, the statute deals with a particular placement or use of a firearm—*the carrying of a firearm concealed on one's person or its concealment, within the possessor's reach, in a vehicle*. In Oregon, it is a crime—a misdemeanor—to carry a firearm that is concealed in either of those ways. ORS 166.250(1)(a), (b). However, that criminal prohibition does

---

[1] As a general proposition, individuals in Oregon have a right to possess firearms for defense of self and property, under Article I, section 27, of the Oregon Constitution. *See generally State v. Hirsch/Friend*, 338 Or 622, 114 P3d 1104 (2005). However, ORS 166.250(1)(c) makes it a crime for certain categories of persons—minors, felons, etc.—to "possess" firearms. Another subsection of the same statute explicitly provides that a person who is *not* within any of the excepted categories does *not* violate the law by "owning, possessing or keeping within the person's place of residence or place of business any handgun." ORS 166.250(2)(b). Yet another subsection provides that such a person does not violate the law by carrying a firearm "openly" in a belt holster. ORS 166.250(3).

not apply to certain specified categories of persons, including "a[ny] person who is licensed under ORS 166.291 and ORS 166.292 to carry a concealed handgun." ORS 166.260(1)(h).

To obtain a concealed handgun license (CHL), a person must meet certain residency, age, and background requirements. ORS 166.291(1) (set out below, 350 Or at 303-04). None of those requirements turns on the mere *use* of marijuana or other controlled substances; however, one requirement for obtaining a CHL is that the person "has not been *convicted* of an offense involving controlled substances." ORS 161.291(1)(L) (emphasis added).

To obtain a CHL, a person must submit an application, along with a fee, to the sheriff of the county in which the applicant resides. ORS 166.291(1)(a), (5). The form of the application is dictated by statute: It sets out the various statutory requirements for issuance of a CHL and a declaration that the applicant meets those requirements, which the applicant must sign. ORS 166.291(4). Upon a person's submission of an application:

"[t]he sheriff of a county, * * * upon receipt of the appropriate fees and after compliance with the procedures set out in this section, *shall* issue the person a concealed handgun license if the person:

"(a)(A)   Is a citizen of the United States; or

"(B)   Is a legal resident alien who can document continuous residency in the country for at least six months and has declared * * * the intent to acquire citizenship status * * *;

"(b)   Is at least 21 years of age;

"(c)   Is a resident of the county;

"(d)   Has no outstanding warrants for arrest;

"(e)   Is not free on any form of pretrial release;

"(f)   Demonstrates competence with a handgun [in certain specified ways]:

"* * * * *

"(g)   Has never been convicted of a felony or found guilty, except for insanity under ORS 161.295, of a felony;

"(h)   Has not been convicted of a misdemeanor or found guilty, except for insanity under ORS 161.295, of a misdemeanor within the four years prior to the application;

"(i)   Has not been committed to the Oregon Health Authority under ORS 426.130;

"(j)   Has not been found to be mentally ill and is not subject to an order under ORS 426.130 that the person be prohibited from purchasing or possessing a firearm as a result of that mental illness;

"(k)   Has been discharged from the jurisdiction of the juvenile court for more than four years if, while a minor, the person was found to be within the jurisdiction of the juvenile court for having committed an act that, if committed by an adult, would constitute a felony or a misdemeanor involving violence, as defined in ORS 166.470;

"(L)   Has not been convicted of an offense involving controlled substances or participated in a court-supervised drug diversion program [with certain listed exceptions]:

"* * * * *

"(m)   Is not subject to a citation issued under ORS 163.735 or an order issued under ORS 30.866, 107.700 to 107.735 or 163.738 [(*i.e.*, a stalking citation or domestic violence restraining order)];

"(n)   Has not received a dishonorable discharge from the Armed Forces of the United States; and

"(o)   Is not required to register as a sex offender in any state."

ORS 166.291(1) (emphasis added). There is one exception to the requirement that a license be issued to any applicant who meets the standards set out at ORS 166.291(1):

"Notwithstanding ORS 166.291(1), and subject to review as provided in subsection (5) of this section, a sheriff may deny a concealed handgun license if the sheriff has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to

the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence."[2]

ORS 166.293(2).

With that statutory background in mind, we turn to the two cases that are before us. In *Willis v. Winters*, 235 Or App 615, 234 P3d 141 (2010), an applicant wished to renew an expired CHL and submitted a renewal application to the sheriff of the county where she resided (Jackson County), as required by ORS 166.295(1)(a).[3] The application form was substantially in the form required by ORS 166.291(4) (described above, 350 Or at 303); however, it contained additional questions about the applicant's use of drugs that the Jackson County Sheriff had added on his own initiative. In her responses to those additional questions, the applicant indicated that she used marijuana regularly and that her use had been authorized by a medical doctor. The sheriff denied the application on the ground that, under federal law, 21 USC § 841(a)(1), the applicant's use of marijuana was unlawful, and, as an illegal user of marijuana, she was prohibited from possessing firearms under 18 USC section 922(g) of the Gun Control Act of 1968, Pub L 90-618, 82 Stat 1213 (1968). The sheriff acknowledged that the applicant possessed an Oregon Medical Marijuana card that purported to authorize her use of marijuana, but he concluded that the federal prohibition on possession of firearms by unlawful users of controlled substances preempted Oregon's concealed handgun licensing law. The sheriff argued, in addition, that his issuance of a CHL to the applicant was prohibited under 18 USC section 922(a)(6),[4] because it would likely deceive

---

[2] There is no claim in the present case that the sheriffs denied any of the petitioner's applications under ORS 166.293(2) or believed that any of the petitioners were likely to be a danger to themselves or others, or to the community at large.

[3] Under ORS 166.295(1)(a), the requirements for renewal of a CHL are identical to the requirements for an initial license set out at ORS 166.291, except that the applicant for renewal need not provide fingerprints and character references.

[4] 18 USC section 922(a)(6) makes it unlawful

"for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or

firearms dealers with respect to the lawfulness of selling firearms to the applicant.

The applicant sought judicial review of that denial in the Circuit Court for Jackson County, as provided in ORS 166.293(5). The circuit court rejected the sheriff's preemption arguments and ordered him to renew the applicant's CHL. The Court of Appeals affirmed. *Willis*, 235 Or App at 629. We describe the Court of Appeals opinion in *Willis* below.

The facts of *Sansone v. Gordon*, 235 Or App 695, 234 P3d 150 (2010), are substantially the same, except that that case involved the sheriff of Washington County and three separate applicants who resided in that county. Each of the three applicants sought to obtain or renew a CHL; each filled out an application that contained questions about marijuana use that the sheriff had added to the form; each received a letter from the sheriff denying the application and explaining that Oregon's concealed handgun licensing statutes were preempted by federal drug and firearm statutes and that issuance of the CHLs would violate 18 USC section 922(a)(6); and each sought review of the denial in Washington County Circuit Court as provided in ORS 166.293(5). The court consolidated the cases and ultimately ordered the sheriff to issue or reinstate the applicants' CHLs. On the sheriff's appeal, the Court of Appeals affirmed, citing its opinion in *Willis*, which it had issued the week before. *Sansone*, 235 Or App at 696.

In *Willis*, the Court of Appeals resolved the issue of whether the federal prohibition on possession of firearms by "unlawful user[s] of controlled substances," 18 USC § 922(g)(3), preempted the Oregon statutes concerning CHLs by applying the preemption analysis employed by this court in *Emerald Steel Fabricators, Inc. v. BOLI*, 348 Or 159, 230 P3d 518 (2010). Invoking a distinction drawn in *Emerald Steel* between provisions that "affirmatively authorize" conduct that federal law prohibits and provisions that exempt conduct from criminal prosecution, the Court of Appeals held in *Willis* that Oregon's concealed handgun licensing statute

---

misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter[.]"

is *not* preempted by federal law, because it does not affirmatively authorize what the federal statute prohibits—*i.e.*, possession of firearms by unlawful drug users—but, instead, merely exempts licensees from state criminal liability for the possession of a concealed handgun. 235 Or App at 627.

The Court of Appeals in *Willis* also considered, and rejected, an alternative argument proffered by the sheriffs for refusing to issue a CHL to a medical marijuana user— that a sheriff's issuance of a CHL to such a person would violate a federal law, 18 USC § 922(a)(6), because it would likely mislead gun dealers "with respect to a[ ] fact material to the lawfulness of the sale [of firearms]" to the person (the material fact being that the sheriff had conducted a background check and had determined that the person was not prohibited from possessing firearms). The Court of Appeals concluded that that argument was based on an erroneous assumption that Oregon law requires a county sheriff to determine whether an applicant's possession of firearms would be unlawful before issuing a CHL to the applicant. *Id.* at 627-29. Ultimately, the court concluded that the denial of petitioner's CHL application was erroneous and affirmed the trial court's decision. As noted, the Court of Appeals shortly thereafter affirmed the trial court's decision in *Sansone,* relying on its decision in *Willis.*

The respondents in *Willis* and *Sansone, i.e.,* the sheriffs of Jackson and Washington counties, separately petitioned for review by this court. We allowed their petitions and consolidated their cases for purposes of review. For the reasons discussed below, we conclude that (1) a sheriff's duty under the Oregon concealed handgun licensing law, to issue CHLs to qualified applicants without regard to their use of medical marijuana, is *not* preempted by 18 USC section 922(g)(3); and (2) neither is a sheriff excused from that duty on the ground that issuance of a concealed handgun license to a medical marijuana user would violate a federal law prohibiting the making of any statement that is likely to deceive a gun dealer regarding the lawfulness of the sale of a firearm.

We address the preemption issue first. The power of Congress to preempt state law arises from the Supremacy Clause of Article VI of the United States Constitution, which

provides that the laws of the United States are "the supreme law of the land," and that the state courts "shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." The United States Supreme Court has identified three circumstances that result in the preemption of state law by federal law: (1) when the federal law expressly provides for preemption; (2) when a congressional statutory scheme so completely occupies the field with respect to some subject matter that an intent to exclude the states from legislating in that subject area is implied; and (3) when an intent to preempt is implied from an actual conflict between state and federal law. *Crosby v. National Foreign Trade Council*, 530 US 363, 372, 120 S Ct 2288, 147 L Ed 2d 352 (2000). The third type of preemption exists not only when it is physically impossible to comply with both the state and federal law, but when "under the circumstances of the particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 US 52, 67-68, 61 S Ct 399, 85 L Ed 581 (1941).

Only the third type of preemption—preemption implied from an actual conflict—is relevant in the present case. That is so because the Gun Control Act of 1968 (the federal statute at issue) expressly renounces any Congressional intent to preempt state law unless the law is in "direct and positive" conflict with the Act. 18 USC § 927.[5]

---

[5] 18 USC section 927 provides:

"No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, *unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together*."

Consistently with the United States Supreme Court's preemption analysis in the face of identical wording in the federal statute at issue in *Wyeth v. Levine*, 555 US 555, 568-73, 129 S Ct 1187, 1196-1204, 173 L Ed 2d 51, 61-70 (2009), we assume that the words "direct and positive conflict" refer to the third type of preemption identified in *Crosby*—preemption implied from an actual conflict—and that such a conflict can be demonstrated by showing that compliance with both the federal and state law is impossible or that the state law "stands as an obstacle" to the full realization of the objectives expressed in the federal law. *See Emerald Steel*, 348 Or at 175 n 15 (following *Wyeth* approach to similarly worded savings clause in the Controlled Substances Act, 21 USC §§ 801- 971).

As will be seen, the real point of contention in this case concerns the second of the two kinds of conflict preemption—"obstacle" preemption. Federal cases teach us that "obstacle preemption" questions are to be resolved by examining the federal law to ascertain its purposes and intended effects, examining the state statute to determine its effects, and comparing the results to determine whether the latter statute in some way obstructs the accomplishment of the objectives that have been identified with respect to the former statute. *See, e.g., Perez v. Campbell*, 402 US 637, 644, 91 S Ct 1704, 29 L Ed 2d 233 (1971) (obstacle preemption analysis involves construction of federal and state statutes and then determination of whether they are in conflict); *Crosby*, 530 US at 373 ("What is a sufficient obstacle [to federal objectives] is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]"). When traditional regulatory powers of the states are implicated (as in the present case), that analysis incorporates a presumption that Congress did *not* intend to preempt. *See Rice v. Santa Fe Elevator Corp.*, 331 US 218, 230, 67 S Ct 1146, 91 L Ed 1447 (1947) (preemption analysis assumes that "historic [']police['] powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress"); *see also Murphy v. Waterfront Commission of New York*, 378 US 52, 96, 84 S Ct 1594, 12 L Ed 2d 678 (1964) (Justice White concurring) (states have primary responsibility for the administration of the criminal law and federal preemption of areas of crime control traditionally reserved to the states has been relatively unknown).

With the foregoing approach to obstacle preemption questions in mind, we turn to the statutes at issue.[6] Earlier in

---

[6] Rather than employing this basic federal approach to obstacle preemption problems, the parties (and the Court of Appeals) have couched their arguments primarily in terms of whether ORS 166.291 "affirmatively authorizes" possession of firearms by marijuana users or merely permits marijuana users to be exempted from criminal liability under ORS 166.250(1)(a) and (b) for Unlawful Possession of a Firearm. Those arguments clearly are directed at this court's decision in *Emerald Steel*, which held that a provision of the Oregon Medical Marijuana Act that "affirmatively authorized" the possession of marijuana for medical uses was preempted by the federal Controlled Substances Act, because it stood as an obstacle to a congressional purpose that inhered in that act—of prohibiting marijuana possession

the opinion, we described the relevant Oregon statutes at length. Briefly, those statutes (1) define as a crime the possession of firearms by certain classes of persons, but do not include either lawful or unlawful "users" of controlled substances in any of those classes (ORS 166.250(1)(c)); (2) define as a crime the concealed (but not the open) carrying of a firearm and the concealment of a firearm on one's person or within its possessor's reach in a motor vehicle, unless the person has a valid concealed handgun license (ORS 166.250(1)(a) and (b), ORS 166.260(1)(h)); and (3) require county sheriffs to issue a CHL to any applicant for a license who meets certain age, residency, and background requirements, without regard to the applicant's use of controlled substances (ORS 166.291).[7]

The federal statute at issue, 18 USC § 922(g), provides, in relevant part:

> *"It shall be unlawful for any person—*
>
> "* * * * *
>
> "(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 USC § 802));
>
> "* * * * *
>
> "* * * to ship or transport in interstate or foreign commerce, or *possess in or affecting commerce*, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

for *any* purpose. 348 Or at 178. However, *Emerald Steel* should not be construed as announcing a stand-alone rule that any state law that can be viewed as "affirmatively authorizing" what federal law prohibits is preempted. Rather, it reflects this court's attempt to apply the federal rule and the logic of the most relevant federal cases to the particular preemption problem that was before it. And particularly where, as here, the issue of *whether* the statute contains an affirmative authorization is not straightforward, the analysis in *Emerald Steel* cannot operate as a simple stand-in for the more general federal rule.

[7] As discussed above, ORS 166.293(2) permits a sheriff to decline to issue a CHL if the sheriff has "reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large," based on certain specified factors. The sheriffs here did not rely on that statute in denying the permits in these cases.

(Emphasis added.) The federal statute thus makes it a federal crime for a person who uses marijuana in violation of federal law to possess a firearm in or affecting commerce. The United States Supreme Court has construed 18 USC section 922(g) in terms of "keep[ing] firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 US 212, 218, 96 S Ct 498, 46 L Ed 2d 450 (1976) (construing earlier version of 18 USC section 922(g)); *see also Dickerson v. New Banner Institute, Inc.*, 460 US 103, 112 n 6, 103 S Ct 986, 74 L Ed 2d 845 (1983) (in enacting 18 USC § 922(g), Congress sought to keep firearms out of the hands of "presumptively risky people"). Because, under the federal Controlled Substances Act, 21 USC §§ 801- 971, marijuana is a Schedule I controlled substance with no lawful uses, 21 USC § 812(b)(1), (c)(10), marijuana users necessarily are "unlawful users" for purposes of 18 USC section 922(g)(3)—and in a class of persons from whom Congress wishes to keep guns. Thus, the federal "purpose[ ] and intended effect[ ]" that is relevant to our inquiry is that of keeping firearms away from marijuana users, without regard to the lawfulness of such use under the laws of their state of residence.

The method Congress chose to accomplish that purpose is to make it a crime for all marijuana users to "possess firearms in or affecting commerce." Congress did not choose to effectuate its policy by enacting a law governing the conduct of state sheriffs—by, for example, prohibiting state law enforcement officers from issuing gun licenses to marijuana users. Consequently, there is no direct conflict between the federal and state statutes under consideration, in the sense of it being impossible to comply with both.

That leaves us to consider the other potential basis for conflict preemption: Does ORS 166.291, which requires county sheriffs to issue CHLs to qualified applicants even if they use marijuana in violation of federal law, stand as an obstacle to the full accomplishment and exercise of the federal firearms statute's purpose? The sheriffs contend that it does, because it allows marijuana users—persons who are deemed *by Congress* to be unqualified to possess firearms—to obtain licenses that effectively *authorize* their possession of firearms. But, as we have already observed, 350 Or at 302-03,

that contention does not accurately reflect the actual terms of the CHL statute. Putting aside the question of whether the CHL statute affirmatively "authorizes" *anything*, the fact remains that the statute is not directly concerned with the *possession* of firearms, but with the *concealment* of firearms in specified locations—on one's person or in one's car. Although, in their briefing, the sheriffs treat that distinction as having no practical significance, there is nothing in the federal preemption analysis that would support that kind of broad brush approach. In fact, it is clear that, when the federal courts attempt to determine whether a state law stands as an obstacle to congressional purposes, they attempt to define the effect of the state statute with considerable precision. *See, e.g., Florida Avocado Growers v. Paul*, 373 US 132, 144-46, 83 S Ct 1210, 10 L Ed 2d 248 (1963) (California statute that, *for purpose of protecting California consumers*, prohibited sale of avocados with oil content of less than eight percent, was not preempted by federal standards that established lower oil content *for determining when avocados were sufficiently mature to be picked, processed, and transported*).

Neither is the statute an obstacle to Congress's purposes in the sense that it interferes with the ability of the federal government to enforce the policy that the Gun Control Act expresses. A marijuana user's possession of a CHL may exempt him or her from prosecution or arrest under ORS 166.250(1)(a) and (b), but it does not in any way preclude full enforcement of the federal law by federal law enforcement officials.

In fact, it is possible that the sheriffs in this case could themselves enforce section 922(g)(3) of the federal Gun Control Act against medical marijuana users who possess guns in violation of federal law. The federal act makes such possession illegal, the sheriffs generally are authorized to enforce federal as well as state law, and no state law prohibits the sheriffs from taking such enforcement actions. But it appears that the sheriffs *also* wish to enforce the federal policy of keeping guns out of the hands of marijuana users by using the state licensing mechanism to deny CHLs to medical marijuana users. The problem that the sheriffs have encountered is that Congress has not enacted a law requiring license denial as a means of enforcing the policy that underlies the

federal law, and the state has adopted a licensing statute that manifests a policy decision *not* to use its gun licensing mechanism for that purpose: State law *requires* sheriffs to issue concealed gun licenses without regard to whether the applicants use medical marijuana.

In other words, the real thrust of the sheriffs' argument appears to be that the state's choice *not* to use its gun licensing mechanism to enforce the federal policy is preempted, even though the federal law that the sheriffs rely on does not in any way mandate the use of state gun licensing schemes in any particular way. One obvious problem with that position is that it presumes that Congress has authority that, in fact, it does not have. It is well established that the federal government lacks constitutional authority to commandeer the policy-making or enforcement apparatus of the states by requiring them to enact or enforce a federal regulatory program. *Printz v. United States*, 521 US 898, 925-31, 117 S Ct 2365, 138 L Ed 2d 914 (1997); *New York v. United States*, 505 US 144, 161-69, 112 S Ct 2408, 120 L Ed 2d 120 (1992). Although the United States Constitution establishes the supremacy of the federal government in most respects, it reserves to the states certain powers that are at the core of state sovereignty. *New York*, 505 US at 156-61. One expression of that reservation of powers is the notion that Congress lacks authority "to require the states to govern according to Congress's instructions." *Id.* at 162.[8]

It follows from that "anti-commandeering" principle that Congress lacks authority to require the states to use their gun licensing mechanisms to advance a particular federal purpose. If Congress lacks the constitutional authority to commandeer the state gun licensing statutes in that fashion, then we can hardly imply an intent to commandeer state gun licensing laws from a federal statute that does not even mention them. Congress did not directly require the states to use their gun licensing mechanisms for the purpose of keeping guns out of the hands of marijuana users, and we conclude

---

[8] The United States Supreme Court has further observed that, while Congress has the authority to pass laws requiring or prohibiting certain acts, it lacks the power to compel *the states* to require or prohibit those acts. *New York*, 505 US at 166. However, Congress can *encourage* states to adopt or enforce federal policy preferences with financial and other sorts of incentives. *Id.* at 166-68.

that Congress did not intend to achieve that same result by making it illegal for medical marijuana users to possess guns. The state's decision not to use its gun licensing mechanism as a means of enforcing federal law does not pose an obstacle to the enforcement of that law. Federal officials can effectively enforce the federal prohibition on gun possession by marijuana users by arresting and turning over for prosecution those who violate it.

Ultimately, then, we reject the sheriffs' contention that, to the extent that ORS 166.291 requires county sheriffs to issue CHLs to qualified applicants without regard to their use of medical marijuana, the statute is preempted by the federal prohibition on gun possession by marijuana users at 18 USC section 922(g)(3). The sheriffs cannot justify their denial of the applications at issue on that ground.

The sheriffs offer an alternative legal justification for their refusal to issue CHLs to petitioners—that, by doing so, they would be violating a federal prohibition on knowingly making a "false" oral or written statement that would be "likely to deceive" gun dealers with respect to the lawfulness of selling a firearm to petitioners. 18 USC § 922(a)(6).[9] The sheriffs observe that 18 USC section 922(t)(1) requires gun dealers, before transferring any firearm to any person not licensed under federal law to deal in guns, to contact the "national instant criminal background system" for a determination that that person's receipt of a gun would not be unlawful. The sheriffs further observe that, under 18 USC section 922(t)(3), that requirement

"shall not apply to a firearm transfer between a [licensed gun dealer] and another person if—

_____

[9] 18 USC section 922(a)(6) provides that it shall be unlawful:

"for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter[.]"

"(A)(i)   such other person has presented to the [licensed gun dealer] a permit that—

"(I)   allows such other person to possess or acquire a firearm;

"(II)   was issued not more than 5 years earlier by the State in which the transfer is to take place; and

"(ii)   the law of the State provides that such a permit is to be issued only *after* an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law."

The sheriffs contend that a prospective gun purchaser's presentation of a license issued under ORS 166.291(1) would have a tendency to lead a gun dealer to believe that the requirements of 18 USC section 922(t)(3) had been satisfied (*i.e.,* that the issuer of the license had performed a background check and had determined that the licensee's possession of a firearm was lawful) and that the requirement that the dealer contact the national instant criminal background system before selling a gun to the licensee was waived. The sheriffs argue that, in light of that tendency, their issuance of a CHL to a person who is known to use medical marijuana (and who therefore is known to be prohibited from owning firearms under federal law) would be likely to deceive gun dealers about the lawfulness of selling a firearm to the person and thus would violate 18 USC section 922(a)(6).[10]

The sheriffs' argument is problematic for two reasons. First, it does not address the fact that, to violate 18 USC section 922(a)(6), the statement regarding the lawfulness of the contemplated firearms transfer that is "likely to deceive" the gun dealer must in fact be "false." An Oregon CHL issued in conformity with the requirements of ORS 166.291(1) is not false: It may indirectly convey an assurance that the licensee meets the requirements for issuance of such a license under

---

[10] The sheriffs appear to have abandoned their related argument in the Court of Appeals that issuance of a CHL to a known medical marijuana user is a "false" (rather than deceptive) statement, because it *actually* asserts that the issuer has performed a background check and has determined that the licensee lawfully may possess firearms.

ORS 166.291(1),[11] but it does not purport to assure the lawfulness of the licensee's *possession* of firearms under federal law, even indirectly.

Second, there is little likelihood that a gun dealer who is attempting to follow the applicable law would be "deceiv[ed]" into a belief that the requirements of 18 USC section 922(t)(3) had been satisfied by a prospective buyer's presentation of an Oregon CHL. That federal statute excepts a firearm transfer from the requirement of a national instant criminal background check *only* if the prospective buyer presents a permit, issued in the last five years by the state in which the transfer is to take place, that allows the person to possess or acquire a firearm, *and*

> "the law of the State provides that such a permit is to be issued only *after* an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law."

18 USC § 922(t)(3)(A)(ii) (emphasis added). Under that provision, the national instant criminal background check is not waived by the mere fact that a government official in the relevant state has issued a gun license of some undefined variety to the prospective buyer. Rather, waiver of the background check depends on the law of the state that issued the permit. No Oregon law requires verification of compliance with federal law as a condition of issuance of a CHL. Any gun dealer that accepts an Oregon CHL as proof that the requirements of 18 USC section 922(t)(3) have been satisfied does so in disregard of Oregon's statutory scheme and cannot be said to have been deceived by anything other than the gun dealer's own lack of awareness of Oregon law.

---

[11] On its face, a CHL provides certain pertinent information about the licensee, the name of the issuer of the license, and the date and place of its issuance, all under the heading "Oregon Concealed Handgun License." *See* ORS 166.292(3) (setting out form of concealed handgun license). If an interested party were to examine the statutory standards for issuance of an Oregon CHL, they might reasonably assume that the issuer had concluded that the licensee satisfied the requirement set out at ORS 166.291(1).

To conclude: the sheriffs in this case are not excused from their duty under ORS 166.291(1) to issue CHLs to qualified applicants, without regard to the applicant's use of medical marijuana, on the ground that issuance of CHLs to medical marijuana users would violate a federal prohibition on making false statements about the lawfulness of transferring firearms to such persons. Neither are the sheriffs excused from that statutory duty on the ground that it is preempted by federal law. The sheriffs were without authority to deny petitioner's CHL applications.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit courts are affirmed.