Submitted December 11, 2013, petition for judicial review dismissed October 22, 2014

**ASSOCIATION OF OREGON
CORRECTIONS EMPLOYEES,**
*Petitioner,*

*v.*

**STATE OF OREGON,**
Department of Corrections,
*Respondent.*

Employment Relations Board
UP06911; A150943

337 P3d 998

Becky Gallagher and Fenrich & Gallagher, P. C., filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

The Association of Oregon Corrections Employees petitions for judicial review of an order in which the Employment Relations Board determined that the Oregon Department of Corrections did not commit an unfair labor practice when it refused to negotiate, in 2011, over certain aspects of a new "Health Engagement Model" adopted by the Public Employees Benefit Board. After the Department of Corrections suggested that the case might have become moot, we requested and received supplemental briefing from the parties on that topic. We conclude that the case is moot because a decision by this court would not have any practical effect on the rights of the parties. Accordingly, we dismiss the petition for judicial review.

## I. BACKGROUND

A. *The Public Employees Collective Bargaining Act*

This dispute arises under the Public Employees Collective Bargaining Act (PECBA), which gives public employees the right to bargain collectively with their public employers "on matters concerning employment relations." ORS 243.662. PECBA requires bargaining over "mandatory subjects of bargaining," which are described in the definition of "employment relations" in ORS 243.650(7). PECBA allows, but does not require, parties to agree to discuss "matters other than mandatory subjects of bargaining that are not prohibited by law * * *, which are permissive subjects of bargaining." ORS 243.650(4).

> "The statute thus breaks subjects of bargaining into two primary categories: mandatory and permissive. Any subject that is not mandatory is permissive, with two limitations: The parties must reach 'mutual agreement' in order to address the permissive subject in collective bargaining, and the permissive subject must not be 'prohibited by law.'"

*Service Employees Int'l Union Local 503 v. DAS*, 183 Or App 594, 598, 54 P3d 1043 (2002).

As detailed below, this dispute involves the parties' disagreement about whether a certain union proposal was a subject of mandatory bargaining.

## B. *Events leading to the challenged order*

Employees represented by the Association of Oregon Corrections Employees (AOCE) and the Oregon Department of Corrections (DOC) were parties to a collective bargaining agreement that expired in June 2011. In late 2010, the parties began negotiations on a successive bargaining agreement. While negotiations were ongoing, the Public Employees Benefit Board (PEBB) adopted the Health Engagement Model (HEM), which it hoped would encourage public employees (including AOCE members) to improve their health. One aspect of the HEM, as then envisioned, is that employees would take steps to identify potential health risks and to address those issues. Employees who did not enroll in HEM or comply with certain HEM requirements would be subject to monthly surcharges ranging from $20 to $105.

During contract negotiations with the DOC, the AOCE demanded to bargain over certain aspects of the HEM. The parties reached a tentative agreement in August 2011 that left HEM issues open, and the DOC agreed not to implement the HEM while the parties attempted to resolve the issue. In mid-October, the DOC informed the AOCE that it "refuse[d] to bargain on the Association's bargaining demand," which, the DOC asserted, presented "a prohibited/ permissive subject of bargaining."[1]

Later that month, the AOCE filed a petition with the Employment Relations Board (ERB) to initiate binding interest arbitration over the HEM model. The same day, the AOCE made a final offer about the HEM, which would have made employee participation in the HEM program voluntary. The DOC moved to hold the interest arbitration in abeyance on the ground that the parties had already asked ERB to decide whether the HEM was "mandatory for bargaining."

On October 27, 2011, the AOCE filed an amended unfair labor practice complaint with ERB alleging (among

---

[1] The parties subsequently ratified a 2011-2013 bargaining agreement. Neither party contends that ratification of *that* agreement rendered the issues in this case moot. We need not address that potential jurisdictional question as we conclude that the case is moot for different reasons.

other things) that the DOC had committed an unfair labor practice by refusing to bargain over the HEM. As pertinent here, the AOCE asked ERB to find that the DOC had committed an unfair labor practice and to order the DOC to bargain in good faith.

In an expedited hearing before ERB, the AOCE argued that its HEM proposal affected health-insurance benefits and direct monetary benefits to DOC employees because the surcharges imposed for nonparticipation or noncompliance would reduce employees' salaries. Accordingly, the AOCE argued, the proposal related to a mandatory subject of bargaining. The DOC countered that PEBB had exclusive statutory authority to design health-benefit plans for state employees and, the DOC asserted, the AOCE's proposal conflicted with that legislative grant of authority because it would change the contents of PEBB's health-benefit plans. The DOC argued that such a conflict made the proposal a subject prohibited for bargaining.

ERB agreed with the DOC. In its order dismissing the AOCE's complaint, ERB reviewed previous judicial and administrative decisions related to "the State's obligation to bargain about a subject over which a State agency has statutory authority," on related issues, eventually "deriv[ing] the following rule from [those] cases:"

> "[I]f a proposal concerns a subject over which a State agency has statutory authority, we decide if the agency's statutory mandate is compatible with the State's PECBA bargaining obligation. If the bargaining obligation cannot be reconciled with the agency's mandate, we will conclude that the proposal concerns a subject prohibited for bargaining."

ERB noted that Oregon law requires PEBB to provide employees with benefit plans "at a cost affordable to both the employer and the employees," ORS 243.125(2), to select coverage "on the best basis possible with relation both to the welfare of the employees and to the state," ORS 243.125(1), and to consider factors like a "competitive marketplace," creativity and innovation, and the improvement of employee health, ORS 243.135. Thus, ERB determined, PEBB's statutory obligations "are incompatible with the State's bargaining obligations under the PECBA," which ERB asserted

are "not designed to produce the 'best' plans for both the employer and employee, * * * plans that address cost containment issues because they are 'affordable' to the employer," or "plans that improve employee health," demonstrate creativity or innovation, or reflect a competitive marketplace. ERB concluded that the DOC could not bargain over the AOCE's HEM proposal "without contravening PEBB's statutory mandate" and that, accordingly, "the proposal concerns a prohibited subject for bargaining." Based on that and other rulings not pertinent here, ERB dismissed the unfair labor practice complaint. The AOCE unsuccessfully petitioned for reconsideration, then petitioned for judicial review.

## II. THE PARTIES' ARGUMENTS ON JUDICIAL REVIEW

On judicial review, the AOCE contends that ERB misconstrued its HEM proposal. According to the AOCE, it was not proposing that its members be free from the HEM; rather, it asserts that it merely "sought to have [the DOC], not the employee, pay the HEM surcharges levied against AOCE members." Therefore, the AOCE concludes, the DOC could have accepted its proposal without creating a conflict with PEBB's statutory duty to design health-benefit programs for state employees. Finally, the AOCE contends that ERB erred by announcing the "rule" quoted above, 266 Or App at 499. The AOCE argues that ERB's "extraordinarily general rule is not supported by statute or case law and significantly erodes Oregon's PECBA in State bargaining. It is an error of law."

In response, the DOC challenges the AOCE's characterization of its bargaining proposal, asserting that the AOCE initially sought to bargain about "the actual components of the HEM program itself." The DOC contends that the AOCE did not argue until it moved for reconsideration of ERB's order that its proposal was limited to the issue of who would pay the HEM surcharges. Accordingly, the DOC argues, that contention is not preserved for our review and we should dismiss the petition for judicial review. In the alternative, the DOC suggests that, if the petition for reconsideration before ERB adequately preserved the surcharge-payment question, we should remand to ERB for it to

consider the question in the first instance. On the merits, the DOC asserts that the AOCE's broader proposal—which the DOC describes as seeking "to convert the HEM program into an 'incentive based' program, as opposed to a disincentive program"—was a proposal to change "plan design over which [the DOC] could not bargain," as that is an area within PEBB's exclusive authority.

## III.  MOOTNESS

In its brief on judicial review, the DOC suggested that this case might be moot because, after ERB issued its order, "it appears that AOCE modified its demand to bargain to concern only employer contributions to the HEM surcharge, as opposed to plan design more generally" and that the parties "actually bargained over that narrow issue." Thus, the DOC concluded in its brief, "In light of AOCE's argument on judicial review that DOC was required to bargain over its proposal *because* the proposal concerned employer contributions, the case *may* be moot." (Emphasis in original.) Following oral argument, we requested supplemental briefing on whether this case had become moot after ERB issued its order. In its supplemental brief, the DOC takes the position that the case has *not* become moot. Interestingly, the AOCE—which filed the petition for judicial review—argues that the case *has* become moot. Rather than simply request dismissal of its own case, however, the AOCE asks us to "exercise [our] equitable power to vacate the ERB decision."

The record and the parties' supplemental briefs reveal the following facts. *Cf. First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 206-07, 986 P2d 556 (1999), *repudiated in part on other grounds, Kerr v. Bradbury*, 340 Or 241, 131 P3d 737 (2006) (court has inherent authority to consider extra-record evidence to determine whether an appeal remains justiciable).

The AOCE filed its amended unfair labor complaint with ERB in October 2011, a week after it petitioned for binding interest arbitration and made its final offer, which included the AOCE's proposal to make HEM participation voluntary. ERB issued its order dismissing the unfair labor

practice complaint in December 2011, and the AOCE filed its petition for judicial review in March 2012. The parties filed their briefs with this court in 2012, and the case was submitted for decision on the briefs, without oral argument, in December 2013.

Meanwhile, the parties had continued to negotiate. In January 2012, the AOCE proposed that the DOC should reimburse employees for HEM surcharges. The DOC declined to bargain over that proposal. In a letter dated October 23, 2013, the DOC asserted that it had not agreed to proceed to interest arbitration over the AOCE's HEM proposal, which the DOC maintained presented a prohibited subject of bargaining. Several days later, on October 29, the parties reached a tentative agreement regarding their 2013-2015 collective bargaining agreement. That agreement included the following term:

> "AOCE withdraws its HEM interest arbitration demand over the contribution amount (not UP-69-11 currently on appeal)."

The referenced ERB order (UP-69-11) is the order before us on judicial review.

The AOCE membership ratified the tentative agreement on December 13, 2013. The parties executed their 2013-2015 collective bargaining agreement a few days later.

Although the parties appear to agree about that series of events, they draw different conclusions about whether this case is moot. The AOCE contends that the October 2013 agreement and subsequent execution of the collective bargaining agreement has resolved the parties' dispute:

> "In the final settlement that was reached on the [2013-2015 collective bargaining agreement] on October 29, 2013, AOCE agreed it would withdraw the HEM interest arbitration request on the amount of the employer contribution to the HEM surcharge in exchange for additional consideration by the State. * * * AOCE specifically kept this appeal alive in order to address ERB's 'rule' created in the Order, noting that [the ERB order] currently on appeal would not be withdrawn. By withdrawing the interest arbitration there can be no further bargaining over the amount of the

employer contribution to the HEM surcharge that was the subject of this [unfair labor practice complaint]. That tentative agreement was ratified by the AOCE membership on December 13, 2013. On December 19, 2013 the parties executed the 2013-2015 CBA."

Thus, according to the AOCE—the party which contends that its proposal was limited to a request for bargaining over whether the DOC would pay employees' HEM surcharges, and whose petition for judicial review is based on that premise—the issue of the DOC's contribution to those HEM surcharge payments has been resolved. Consequently, the AOCE asserts, this case is moot:

"As a term of the AOCE/State of Oregon 2013-2015 contract settlement provides that AOCE cannot proceed with the HEM interest arbitration, there is no longer a controversy between the parties regarding bargaining over the employer contribution to the HEM surcharge."

The DOC disagrees and presents two arguments in support of its contention that this case is not moot. First, the DOC asserts that the parties' settlement of the 2013-2015 collective bargaining agreement did not resolve their dispute over the AOCE's HEM proposal. The DOC points to the term in the October 2013 settlement document apparently excepting "UP-69-11 currently on appeal" from AOCE's withdrawal of its HEM interest arbitration demand. The DOC interprets that document to mean that the AOCE was withdrawing only its January 2012 HEM proposal and *not* the earlier proposal that ERB addressed in its order. Second, the DOC argues that, even if the particular bargaining dispute at issue here has been resolved, the matter on judicial review is not moot because it may arise again in future bargaining sessions.

For the following reasons, we conclude that the case is moot. We start from the basic principle that Oregon courts "have no authority to decide moot cases." *State v. Hemenway*, 353 Or 498, 500, 302 P3d 413 (2013). "A justiciable, nonmoot case is one in which 'the parties to the controversy * * * have adverse legal interests and the court's decision in the matter [will] have some practical effect on the rights of the parties.'" *Homestyle Direct, LLC v. DHS*, 354 Or 253, 260, 311 P3d 487

(2013) (quoting *State v. Snyder*, 337 Or 410, 418, 97 P3d 1181 (2004) (brackets and ellipses in *Homestyle Direct*)). Here, the AOCE has acknowledged that it abandoned its ability to bargain over the HEM-surcharge-payment issue when its members ratified the current collective bargaining agreement. It explains its reference to UP-69-11 in the October 2013 settlement agreement as having meant simply that it would not *withdraw* the appeal of that order, in hopes of keeping this petition for judicial review alive to address the broad "rule" announced in the ERB order. Whatever the AOCE's hopes may have been in that regard, its concession that it intended to settle away any ability to arbitrate or otherwise bargain over *either* of its presettlement HEM proposals—a plausible concession, which we accept as fact—means that nothing this court might say about whether those proposals were mandatory subjects for bargaining would have any practical effect on the parties' rights in this dispute.[2] Put bluntly, the AOCE's proposals are dead, and even if this court held that the proposals involved mandatory subjects for bargaining, that holding would not bring the proposals back to life.

In arguing to the contrary, the DOC asserts that the parties' ongoing relationship raises the question whether the parties may or must bargain "over any *future* changes to the HEM program's structure." (Emphasis in original.) The DOC argues that the parties' "continuous[] disagree[ment] about whether the various features of the HEM program are subject to collective bargaining" means that "a ruling from this court would have very real consequences for *both* parties" in future contract negotiations. (Emphasis in original.)

That argument raises interesting questions about mootness and justiciability. At bottom, the DOC urges us to

---

[2] We may decide the pertinent "jurisdictional facts" in determining whether a case before us has become nonjusticiable. *Mullens v. L. Q. Development*, 312 Or 599, 608, 825 P2d 1376 (1992); *see Nimbus*, 329 Or at 206 (court may consider extra-record evidence to determine whether an appeal remains justiciable). *Cf.* ORAP 8.45 ("Except as to facts the disclosure of which is barred by the attorney-client privilege, when a party becomes aware of facts that probably render an appeal moot, that party shall provide notice of the facts to the court and to the other party or parties to the appeal, and may file a motion to dismiss the appeal." (Footnote omitted.)). To the extent that the parties dispute as a factual matter whether their settlement was intended to deprive the AOCE of the ability to pursue arbitration of its 2011 HEM proposal, we accept the AOCE's concession that the settlement had that effect.

address ERB's ruling because it raises issues that the DOC perceives are likely to arise again in the future. We could simply reject that argument by noting, accurately, that the Supreme Court has held that Oregon courts lack authority to decide moot cases even when those cases raise issues that are "capable of repetition, yet evading review." *E.g., Yancy v. Shatzer,* 337 Or 345, 363, 97 P3d 1161 (2004) (internal quotation marks omitted). The DOC's contention that the HEM-surcharge issues likely will arise again in future bargaining sessions—*i.e.,* that they are capable of repetition—seems doomed under cases like *Yancy.*

The answer is not quite so straightforward, though, because other cases—those on which the DOC relies—suggest that, at least in some circumstances, a government body's need to understand the law that governs it may maintain the justiciability of a case that otherwise would be considered moot. Those cases include *State v. Snyder,* 337 Or 410, 97 P3d 1181 (2004), in which the state petitioned the Supreme Court to review a decision of this court in which the state had prevailed. This court had held that the trial court erred in admitting the results of a blood-alcohol test at the defendant's trial for driving under the influence of intoxicants, but nonetheless affirmed the defendant's criminal conviction on the ground that the evidentiary error was harmless. *Id.* at 412. The state petitioned for review, challenging this court's holding regarding the admissibility of the evidence. The defendant did not seek review. *Id.* at 419. The Supreme Court held that the case was justiciable even though the defendant no longer challenged his conviction, which the Supreme Court's decision would affect. *Id.* That was so, the Supreme Court explained, because, if it did not review this court's holding about the admissibility of the blood-alcohol test results, that holding would "be controlling on trial courts, the state, and future defendants." *Id.* In other words, the court concluded, its decision would "have a practical effect on the state." *Id.*

Thus, in *Snyder,* the Supreme Court held that the state's need to understand its future obligations in enforcing the criminal laws kept the case from becoming moot even though a decision by that court would have no practical effect on the defendant's rights. *Id.* at 420. The Supreme

Court subsequently allowed the state's petition for review in at least two analogous criminal cases in which the state was satisfied with the ultimate disposition of the case in this court, but sought to challenge the underlying reasoning. *State v. Steen*, 346 Or 143, 145, 206 P3d 614 (2009) (citing *Snyder* for the proposition that the "state may petition for review because of impact on future cases even if state obtained favorable disposition"); *State v. Couch*, 341 Or 610, 615, 147 P3d 322 (2006) (similar).

However, the desire of governmental actors to understand the law that governs their actions has not always sufficed, in the Supreme Court's view, to prevent a case from becoming moot. For example, *Kerr v. Bradbury*, 340 Or 241, 131 P3d 737, *adh'd to on recons*, 341 Or 200, 140 P3d 1131 (2006), involved a situation in which the plaintiff in a declaratory judgment action asserted that an initiative petition that the Secretary of State had approved for circulation violated the "full text" provision of Article IV of the Oregon Constitution. When the case was before this court, we held, in the Supreme Court's words, that "Article IV, section 1(2)(d), requires initiative petitions to include the entire text of the statute to be amended, not just the amendatory text," which the proposed petition did not do. *Id.* at 243. The petitioner subsequently failed to obtain the required number of signatures to qualify the initiative for the ballot. Nonetheless, the Secretary of State, who had petitioned for review, argued that the case was not moot because he would be required, in the future, to "comply with the Court of Appeals decision, which [would] continue to have a practical effect on his responsibilities" in approving petitions for circulation. *Id.* at 243-44. The Supreme Court rejected that argument, deeming it "to be a request for an advisory opinion" of the sort that Oregon courts cannot issue. *Id.* at 244.

On reconsideration, the court adhered to that decision, explaining that the Secretary of State could still argue, in future cases, that this court's holding about the "full text" requirement had been incorrect. *Kerr v. Bradbury*, 341 Or 200, 204, 140 P3d 1131 (2006). The court acknowledged that, "because mootness [had] denied the Secretary of State the opportunity to test, in [the Supreme Court], the merits of the Court of Appeals' holding on that issue," this court's

opinion was binding on the parties and on lower courts. *Id.* Nonetheless, the court held, the Secretary of State would need to wait for a future case to "seek a ruling from [the Supreme Court] on the constitutional question that *** eluded [its] review" in *Kerr. Id.*[3]

Kerr cited to *Yancy* and with good reason. 340 Or at 244. In *Yancy*, the Supreme Court concluded that any decision it issued would have no practical effect on the parties' rights because the particular dispute between them had resolved, notwithstanding that the case raised questions about the constitutionality of a city park-exclusion ordinance. 337 Or at 363 (dismissing case as moot because the petition for review asked the court "to decide a matter that no longer [was] a controversy between the parties"). Justice Balmer specially concurred, contending that the case should not be dismissed because, among other things, "a ruling on the merits would establish whether the city's ordinance is constitutional or not and, thus, would have a direct, immediate effect on the city." *Id.* at 371 (Balmer, J., specially concurring).

We confess some uncertainty about the principle distinguishing the cases in which an appellate court's opinion explaining the law that will control a government

---

[3] We note that this case is not one in which either party sought a declaratory judgment delineating the scope of the DOC's obligations under PECBA to bargain (or not) over the HEM surcharges. The Declaratory Judgment Act creates additional complexities regarding mootness and justiciability that we need not address here. For our purposes, it is sufficient to observe that Declaratory Judgment Act cases may sometimes remain justiciable in circumstances that would render other cases moot, precisely because those cases request *declarations* about the parties' legal obligations that will bind the parties in the future, not a ruling (as in this case) on whether a specific past action violated the law. *See, e.g., Pendleton School Dist. v. State of Oregon*, 345 Or 596, 606, 200 P3d 133 (2009) (complaint seeking declaratory judgment about the legislature's constitutional obligation to fund the public-education system in future biennia was justiciable because it "present[ed] a set of present facts regarding the interpretation of a constitutional provision" and was "not simply an abstract inquiry about a possible future event"); *see also Couey v. Brown*, 257 Or App 434, 443, 306 P3d 778 (2013), *rev allowed*, 354 Or 735 (2014) ("a dispute under the declaratory judgment act is or is not moot depending on the facts of the particular case, and in particular, the degree to which the facts that will make the dispute active are imminent and certain, as opposed to contingent and hypothetical"). Thus, circumstances that render a Declaratory Judgment Act case like *Kerr* moot certainly will render moot a case involving analogous issues that arose in a more traditional dispute over past events.

party's actions in *future* cases may be said to have a practical effect on that party, such that the case remains justiciable on appeal or review even though the appellate opinion will have no effect on the underlying dispute (*e.g.*, *Snyder*) and those in which such an opinion would not have a practical effect on any party but would, instead, be an improper advisory opinion (*e.g.*, *Kerr* and *Yancy*). However, we perceive at least two ways in which those lines of cases may be distinguished.

First, many cases become moot because the underlying dispute between the parties has ended altogether, so that even the lower court's decision has no continuing effect on the parties. *See, e.g., Barcik v. Kubiaczyk*, 321 Or 174, 187-91, 895 P2d 765 (1995) (high-school students' challenges to school regulations concerning student publications generally became moot when the students graduated). In *Snyder*, however, the particular events that gave rise to litigation between the parties had not ended when the case was on review in the Supreme Court. That is, although the *Snyder* defendant no longer challenged his conviction by the time the case reached the Supreme Court, that conviction remained in place. Thus, although the Supreme Court's decision would not affect the defendant's rights, the effect that the decisions of this court and the circuit court had on the defendant's rights continued. The Supreme Court appears to have relied, at least in part, on that set of circumstances in explaining why the case was not moot despite the fact that *its* decision could no longer have a practical effect on the defendant's rights. 337 Or at 419-20.[4] If that is the feature that distinguishes *Snyder* from cases like *Kerr*, it does not

---

[4] Such a rationale would seem to be in some tension with the Supreme Court cases that have focused, for purposes of the mootness analysis, on whether an *appellate* court's decision would have a practical effect on the parties' rights or would, to the contrary, be impermissibly advisory—a principle that the court explained in *Hamel v. Johnson*:

"Appellate courts are prohibited from deciding abstract, hypothetical, or contingent questions. A court's decision on a matter must have some practical effect on the rights of the parties to the controversy. Even if a case otherwise is justiciable, if the court's decision no longer will have a practical effect on or concerning the rights of the parties, then the matter will be dismissed as moot. For example, a case becomes moot when an event occurs that 'render[s] it impossible for the court to grant effectual relief.' *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)."

serve to keep this case alive. Here, ERB's decision itself has no continuing effect on the parties' rights, as the AOCE's presettlement HEM-surcharge proposals are dead.

A second feature of *Snyder* may also serve to distinguish it and similar cases from those, like *Kerr*, that the Supreme Court has held were not justiciable. It appears that the cases that remain justiciable, despite the fact that a judicial opinion will not affect the parties' particular dispute, are cases (like *Snyder*) in which the state seeks to clarify its obligations related to prosecution of the criminal laws that apply statewide. In contrast, the cases that become moot when the particular dispute between the parties has been resolved, notwithstanding a government party's interest in having a court explain the government's legal obligations, are those that involve governmental responsibilities having a narrower application (only to elections, as in *Kerr*, or only to residents of one municipality, as in *Yancy*). That is, it appears that cases involving broadly applicable criminal-law questions remain justiciable—at least on a petition for Supreme Court review filed by the state—even when the defendant no longer challenges his or her conviction, presumably because of the overriding interest that the state has in proper administration of the criminal-justice system. Other cases—even those involving governmental actors who seek judicial clarification of their legal obligations—become moot when the particular dispute between the parties has ended and a judicial decision will have no practical effect on their rights.

If that distinction provides the basis for the line that the Supreme Court has drawn between cases like *Snyder* and cases like *Kerr*, we conclude that this case falls on the

330 Or 180, 184, 998 P2d 661 (2000) (some citations and internal quotation marks omitted; brackets in *Hamel*); *see also, e.g., Weems/Roberts v. Board of Parole*, 347 Or 586, 594 n 7, 227 P3d 671 (2010) (in case in which offenders challenged conditions of their post-prison supervision, some of those challenges were moot on judicial review because the offenders had completed their supervision terms and "[a]ny decision by the Court of Appeals or [the Supreme Court would] not have any practical effect on [the offenders'] rights"); *Corey v. DLCD*, 344 Or 457, 464, 184 P3d 1109 (2008) (dismissing as moot a challenge to an agency order, explaining that the court will dismiss such a challenge as moot when it "becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties").

"nonjusticiable" side of the line. As explained above, the AOCE has acknowledged that its 2011 and January 2012 proposals related to the HEM surcharge retain no vitality in the face of the parties' settlement and ratification of the 2013-2015 collective bargaining agreement. Accordingly, any decision by this court regarding whether those proposals raised mandatory, permissive, or prohibited subjects for bargaining would have no practical effect on the parties' rights as they relate to the underlying dispute. Nor does the DOC's interest in learning more about the applicable legal principles prevent this case from being moot. This case is not analogous to *Snyder*, as it does not raise questions about criminal law of statewide applicability. Rather, the case involves narrower questions, making this case more analogous to *Kerr*. As was true of the Secretary of State's interest in that case, the DOC's interest in knowing more about the law that will govern its future actions (specifically, its response to any future union proposals regarding the HEM) is insufficient to make this case justiciable. As the Supreme Court informed the Secretary of State in *Kerr*, the DOC must await a future "appropriate circumstance" in which to seek a judicial ruling on the question that has evaded review in this case. 341 Or at 204; *see also Cyrus v. Board of County Commissioners*, 226 Or App 1, 12-13, 12 n 7, 202 P3d 274 (2009) (concluding, based in part on *Kerr* and despite *Snyder*, that the petitioners' desire to obtain answers about legal questions likely to arise in other cases was not "sufficient to allow this court to issue what is, at its core, an advisory opinion").[5]

## IV.  VACATUR

Although the AOCE acknowledges that this case is moot, it contends that "the unprecedented 'rule' promulgated by the ERB still needs [to be] addressed before it causes

---

[5] The DOC also cites pre-*Yancy* cases in which this court held that one party's voluntary cessation of challenged activity did not render a claim challenging that action moot. *E.g., Safeway, Inc. v. OPEU*, 152 Or App 349, 356-57, 954 P2d 196 (1998). We need not address the intriguing question whether those cases remain viable post-*Yancy*, as this case does not involve an analogous situation to one in which the defendant in a civil action unilaterally stopped engaging in the acts that had formed the basis for the suit against it, then sought to have that suit dismissed as moot.

confusion and inconsistent case law going forward."[6] The AOCE asserts that the appropriate way for us to address that ERB "rule" is to vacate ERB's order. In response, the DOC argues that this court lacks authority to vacate an order issued by an executive-branch agency on the ground that the petition for judicial review of that order no longer presents a justiciable controversy. On that point, we agree with the DOC.

"Vacatur" occurs when a reviewing court vacates a lower court's decision when a case has become moot on appeal or review. *Kerr*, 340 Or at 245-47. Vacatur is not a decision on the merits of a case. Rather, it is an extraordinary action justified by the reviewing court's determination that the lower court's decision should not remain "on the books," so to speak, as binding precedent, for reasons that are generally unrelated to the merits. *See Terhune v. Myers*, 342 Or 376, 381, 153 P3d 109 (2007). Among the pertinent considerations is whether "the court that rendered the challenged opinion should not have rendered a decision at all on the merits." *Id.*

That kind of "vacatur"—which is what we understand the AOCE to request here—is not among the actions that this court has authority to take with respect to agency orders in contested cases that, like this one, are on judicial review under ORS 183.482. To the contrary, we have authority to set aside or remand such an order only if we conclude—in a case that is justiciable on judicial review—that the agency has misinterpreted the law, acted outside its lawful range of discretion, or has issued an order that is not supported by substantial evidence. ORS 183.482(8).[7]

---

[6] We understand the AOCE to be referring to this passage in ERB's order when it describes the "rule" that ERB has "promulgated":

"We derive the following rule from these cases: if a proposal concerns a subject over which a State agency has statutory authority, we decide if the agency's statutory mandate is compatible with the State's PECBA bargaining obligation. If the bargaining obligation cannot be reconciled with the agency's mandate, we will conclude that the proposal concerns a subject prohibited for bargaining."

*See* 266 Or App at 499.

[7] In taking the judicial-review actions described in ORS 183.482, we sometimes "vacate" agency orders—that is, set them aside—and remand the orders because, for example, they do not include information sufficient for us to engage

We have not made any of those determinations here. The fact that the case has become moot on judicial review does not mean that ERB committed any reversible error when it issued its order, or acted without authority when it did so. Accordingly, we deny the AOCE's request for vacatur.

Petition for judicial review dismissed.

---

in meaningful review. *E.g.*, *Koller v. Veterinary Medical Examining Board*, 243 Or App 639, 258 P3d 1285 (2011). In addition, we sometimes "vacate" an agency order when we have addressed the merits and have concluded that the order is based on a legal error and remand is necessary for the agency to reconsider the case with a correct understanding of the law. *E.g.*, *Brundridge v. Board of Parole*, 192 Or App 648, 656-57, 87 P3d 703, *rev den*, 337 Or 327 (2004). Finally, we have vacated an agency order when the person issuing the order, purportedly on the agency's behalf, lacked statutory authority to do so. *E.g.*, *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 182 Or App 481, 484, 50 P3d 1193 (2002). In each of those cases, we "vacated" an agency order because that order was flawed in a way that gave us authority to reverse, set aside, or remand the order under ORS 183.482. That kind of "vacating" is not the same as employing the equitable "vacatur" remedy that the AOCE urges us to implement in this case, where we are dismissing the petition for judicial review as moot and have voiced no opinion on the merits of the challenged agency order or on the agency's authority to issue it.