Argued and submitted December 18, 2020, affirmed March 2, 2022

STATE OF OREGON,
acting by and through
Department of Human Services,
*Plaintiff-Respondent,*

*v.*

Henry L. HOBART
and Rose E. Jimenez,
*Defendants-Appellants.*

Washington County Circuit Court
18CV24698; A170712

507 P3d 299

The Oregon Department of Human Services (DHS) brought this action to recover a portion of Medicaid benefits paid on behalf of the decedent. The trial court found that, a few months before her death, the decedent had transferred her interest in real property to her husband, without consideration, and with the intent to hinder or prevent Medicaid estate recovery. Based on those findings, the trial court set aside the property transfer, relying on ORS 416.350(2), ORS 411.620(2), and ORS 411.630(2). The court then awarded recovery to DHS in an amount equal to the value of the decedent's half-interest in the property. Defendants argue that the court erred because, under the state and federal definitions of "estate," DHS could recover only from assets in which decedent had legal title or interest at the time of her death and, here, the decedent transferred her property interest before her death. *Held*: The trial court did not err. The court was authorized to set aside the transfer under ORS 416.350(2), ORS 411.620(2), and ORS 411.630(2). Once set aside, it was as if the transfer had not occurred. Moreover, ORS 416.350(2), ORS 411.620(2), and ORS 411.630(2) are not in conflict with the state or federal definitions of "estate."

Affirmed.

Keith R. Raines, Judge.

Tim Nay argued the cause for appellants. Also on the briefs was Law Offices of Nay & Friedenberg.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

The Oregon Department of Human Services (DHS) brought this action to recover a portion of the Medicaid benefits that it paid on behalf of Alexandra Hobart (the decedent). The decedent and her husband owned a home together for many years. A few months before her death, the decedent transferred her interest in the home to her husband without consideration and with the intent to hinder or prevent Medicaid estate recovery. The trial court set aside the transfer pursuant to ORS 416.350(2), ORS 411.620(2), and ORS 411.630(2), and it awarded DHS recovery based on the decedent's half-interest in the home. Defendants argue that the court erred in doing so, because, under state and federal law, DHS may recover only against assets for which the decedent had legal title or interest at the time of death. In defendants' view, the decedent successfully transferred her ownership interest in the home before her death, such that she did not have legal title or interest at the moment of death, and any subsequent set-aside cannot change that fact. We are unpersuaded by defendants' arguments, agree with DHS that recovery under these circumstances does not conflict with state or federal law, and, accordingly, affirm.

## FACTS

We take the relevant facts from the judgment, which contains both stipulated facts and facts found by the trial court, supplemented with a few undisputed background facts.

The decedent and her husband bought a home (the Property) in 1994. They owned the Property jointly. It was the family home, and they lived there together until late 2011 or early 2012, when the decedent moved into a nursing facility.

In November 2013, the decedent began receiving Medicaid benefits.

In April 2016, the decedent transferred her interest in the Property to her husband. At the time, the decedent's husband had advanced cancer, and he had been told

in November 2015 that he likely had six to 12 months to live. The decedent and her husband knew that DHS would be authorized to seek Medicaid reimbursement from the decedent's interest in the Property. To qualify for Medicaid, the decedent had been required to spend down her other assets, leaving her interest in the Property as the sole asset of value from which DHS could recover any repayment. The April 2016 transfer was made "without consideration," and it was not disclosed to DHS.

On August 23, 2016, the decedent passed away. She had received $326,403.82 in Medicaid benefits at the time of her death.

In September 2016, the decedent's husband created a testamentary trust and conveyed the Property to the trust. He named defendants—adult children of the decedent and her husband—as successor trustees. In December 2016, the decedent's husband passed away. In February 2017, defendants, acting as successor trustees, conveyed the Property from the trust to themselves.

DHS initiated this action against defendants to recover Medicaid benefits paid on behalf of the decedent, asserting several legal theories of recovery. Defendants made various arguments in response, including asserting federal preemption. The trial court ultimately decided the case in DHS's favor. It set aside the April 2016 transfer, which it found was made without adequate consideration, while the decedent was receiving Medicaid benefits, and with the intent to hinder or prevent DHS from recovering against the decedent's estate. The court entered a money judgment in DHS's favor for $108,000—which was half of the Property's fair market value at the time of the decedent's death—plus interest.

## STANDARD OF REVIEW

Questions of statutory construction are questions of law that we review for legal error. *Sherman v. State of Oregon*, 303 Or App 574, 578, 464 P3d 144 (2020), *aff'd*, 368 Or 403, 492 P3d 31 (2021). Whether federal law preempts an Oregon statute also is a question of law that we review

for legal error. *Herinckx v. Sanelle*, 281 Or App 869, 873, 385 P3d 1190 (2016).

## ANALYSIS

Medicaid "is a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 US 297, 308, 100 S Ct 2671, 65 L Ed 2d 784 (1980). Because it is a needs-based program, people who qualify for Medicaid necessarily have few assets. *See Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 US 268, 291, 126 S Ct 1752, 164 L Ed 2d 459 (2006) (Medicaid is intended to be the "payer of last resort" for those lacking resources to pay for their own medical care.). Generally, a person may own no more than a home, a vehicle, personal belongings, and $2,000 or less in other assets. 42 USC §§ 1382(a)(1)(B), 1382b(a)(1)-(2)(A).

Although Medicaid applicants themselves must not exceed a certain asset threshold to qualify for the program, their spouses need not meet the qualification requirements, and there are provisions in place to address marital assets. First, the applicant's home is excluded from the qualification calculation, avoiding the need to sell the home and allowing the spouse to continue residing there. 42 USC § 1396r-5(c)(5). Second, the couple's other assets are assessed collectively and divided into two portions. The half attributed to the Medicaid applicant must be spent down to $2,000 or less. *Id.* §§ 1382(a)(1)(B), 1396r-5(c). The half attributed to the spouse—called the "Community Spouse Resource Allowance"—need not be spent down. *Id.* § 1396r-5(c)(2)(B). Going forward, the spouse also may receive a portion of the Medicaid recipient's income, further avoiding impoverishment of the spouse. *Id.* § 1396r-5(d). Medicaid "protect[s] community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance." *Wisconsin Dept. of Health and Family Servs. v. Blumer*, 534 US 473, 480, 122 S Ct 962, 151 L Ed 2d 935 (2002).

Once a person qualifies for Medicaid and begins receiving benefits, "[f]ederal law generally prohibits recovery of properly paid Medicaid benefits, except from the

Medicaid recipient's estate." *Nay v. Dept. of Human Services*, 360 Or 668, 671-72, 385 P3d 1001 (2016) (*Nay II*) (discussing 42 USC section 1396p(b)(1)). The law governing Medicaid estate recovery is summarized in *Nay II*, 360 Or at 670, and in *Nay v. Dept. of Human Services*, 267 Or App 240, 245-47, 340 P3d 720 (2014) (*Nay I*), *aff'd in part, vac'd in part*, 360 Or 668, 385 P3d 1001 (2016) (*Nay II*).

In certain circumstances—as exist here—the state must pursue estate recovery after a Medicaid recipient dies, as a condition of federal funding. States "shall" seek to recover medical-assistance benefits that were paid for "nursing facility services, home and community-based services, and related hospital and prescription drug services" on behalf of "an individual who was 55 years of age or older." 42 USC § 1396p(b)(1)(B); *see also id.* § 1396a(a)(18) (requiring compliance with section 1396p as a condition of federal funding). Given the Medicaid eligibility requirements, it is not uncommon that the only significant asset available for estate recovery is an interest in the family home. Rather than risk forcing an elderly spouse to move out of the family home as a consequence of estate recovery, the law provides that "only after the death of the individual's surviving spouse" can estate recovery occur. *Id.* § 1396p(b)(2); *see also In re Estate of Barg*, 752 NW 2d 52, 68 n 7 (Minn 2008), *cert den*, *Vos v. Barg*, 557 US 935, 129 S Ct 2859, 174 L Ed 2d 576 (2009) ("Allowing recovery from a spouse's estate does not risk impoverishing a community spouse, because the spouse must be dead for the recovery to occur.").

Federal law defines a Medicaid recipient's "estate" to include "whatever state probate law defines as the estate," but it also "gives states the option to choose to expand that definition, so that it includes not only the probate estate, but also other property interests that the Medicaid recipient had at the time of death." *Nay II*, 360 Or at 672 (discussing 42 USC § 1396p(b)(4)). Oregon uses "the expanded, permissive definition of 'estate' authorized by 42 USC § 1396p(b)(4)(B)." *Id*. at 673. Under ORS 416.350(6)(a), " '[e]state' includes all real and personal property and other assets in which the deceased individual had any legal title or interest at the time of death including assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy,

tenancy in common, survivorship, life estate, living trust or other similar arrangement."

It is undisputed (and indisputable) that, under the expanded definition of "estate" allowed by 42 USC section 1396p(b)(4)(B) and used in Oregon, any assets available for purposes of Medicaid estate recovery are limited to "the interests that the Medicaid recipient had at the time of death." *Nay II*, 360 Or at 672; *see* 42 USC § 1396p(b)(4)(B) (referring to assets in which the Medicaid recipient had "legal title or interest at the time of death"); ORS 416.350(6)(a) (referring to assets "in which the deceased individual had any legal title or interest at the time of death").

The Oregon legislature has enacted certain statutes to protect the state's ability to obtain estate recovery. Three such statutes are relevant here. ORS 411.630(2) prohibits property transfers that are intended to "hinder or prevent" DHS from recovering from a Medicaid recipient's estate. ORS 416.350(2) provides that transfers of real property by Medicaid recipients "without adequate consideration are voidable and may be set aside under ORS 411.620(2)." And ORS 411.620(2) authorizes courts to set aside a transfer that lacks adequate consideration or that was intended to hinder or prevent estate recovery and to award recovery out of the asset to DHS. "Except with respect to bona fide purchasers for value, the department * * * may prosecute a civil suit or action to set aside the transfer * * * of any money or property made in violation of any provisions of ORS 411.630, 411.708 and 416.350 and the department * * * may recover out of such money or property, or otherwise, the amount or value of any * * * medical assistance obtained as a result of the violation * * *." ORS 411.620(2); *but see also* ORS 416.350(4) (limiting estate recovery to the value of the recipient's interest in the asset, rather than the full value of the asset).

In this case, the trial court relied on all three statutes. The court found that there was no consideration for the April 2016 transfer and that it therefore lacked "adequate consideration" under ORS 416.350(2). The court also found that, in making the transfer, the decedent and her husband

intended to "hinder or prevent" DHS from recovering from the decedent's estate, in violation of ORS 411.630(2). On both bases, the court set aside the transfer, as provided in ORS 411.620(2), and awarded DHS half the value of the Property at the time of the decedent's death.

As previously described, defendants contend that the trial court erred. They argue that, because the decedent transferred title to her husband before her death, she had no legal title or interest in the Property at the time of death, and that is the end of the matter. That is, in defendants' view, if a Medicaid recipient successfully transfers assets at any time before death (even minutes before), those assets necessarily are not part of the recipient's "estate." The premise of defendants' reasoning is that the moment of death controls and that there is no way to go back in time. If the decedent did not have legal title or interest in an asset at the moment of death, nothing else matters, in defendants' view, and no future "setting aside" can change that dispositive moment.

Defendants make overlapping arguments that come at their advocated conclusion from various angles. Ultimately, however, the primary thrust of their arguments is that enforcing the set-aside provisions in ORS 411.620(2), ORS 411.630(2), and ORS 416.350(2) is inconsistent with how a Medicaid recipient's "estate" is defined in ORS 416.350(6)(a) and 42 USC section 1396p(b)(4)(B). Both the state and federal definitions of "estate"—which are "parallel," *Nay II*, 360 Or at 673—require legal title or interest "at the time of death." ORS 416.350(6)(a) (referring to assets "in which the deceased individual had any legal title or interest at the time of death"); 42 USC § 1396p(b)(4)(B) (referring to assets in which the Medicaid recipient had "legal title or interest at the time of death").

We are unpersuaded by defendants' arguments. When a person transfers real property with the specific intent to "hinder or prevent" estate recovery in violation of ORS 411.630(2), or when a Medicaid recipient transfers real property "without adequate consideration" under ORS 416.350(2), ORS 411.620(2) expressly provides for the setting aside of the transfer. We agree with DHS that, when the court set aside

the April 2016 transfer as provided in ORS 411.620(2), the decedent's interest reverted to her estate. Moreover, because the April 2016 transfer was voidable at the time it occurred, the decedent retained an interest in the home at the time of her death. Although it may not be possible to turn back time in fact, one can turn back time in a legal sense. Once set aside, it was as if the transfer had never occurred.

In so concluding, we are not suggesting that the legislature has unchecked authority to provide for the setting aside of pre-death property transfers by Medicaid recipients. There are no doubt express or implied limits on that authority. However, here, the legislature has provided for the setting aside of property transfers only in very limited circumstances, and those statutes have been in place for five decades. *See* ORS 411.630 (1965) (providing for set aside of transfers intended to hinder or prevent estate recovery); *former* ORS 414.105(2) (1971), *renumbered as* ORS 416.350(2) (2009) (providing for set aside of transfers made without adequate consideration). In defendants' view, there are literally no circumstances in which a pre-death transfer may be set aside and the asset treated as one in which the decedent had legal title or interest at the time of death. In the absence of more nuanced arguments, we will not speculate as to the exact limits of the legislature's authority to provide for the set aside of real property transfers under state law—or whether they have been reached with the existing statutes. The only issue before us is whether enforcing the existing statutes—ORS 411.620(2), ORS 411.630(2), and ORS 416.350(2)—is inconsistent with the definition of "estate" in ORS 416.350(6)(a) and 42 USC section 1396p(b)(4)(B). It is not.

Defendants' heavy reliance on *Nay II* is misplaced. In *Nay II*, the Supreme Court held that DHS exceeded its Oregon statutory authority when it amended its administrative rules to allow estate recovery against any assets that a Medicaid recipient had transferred to his or her spouse in the five years before applying for Medicaid. 360 Or at 670. In defending the amendments, DHS relied on four sources of Oregon law as giving a Medicaid recipient an interest in such property at the time of death, notwithstanding a

pre-death transfer: the presumptions regarding marital assets that apply to marital dissolutions, ORS 107.105(1)(f); a spouse's right to an elective share under probate law, ORS 114.600 to 114.725; the voidability of transfers made without adequate consideration, ORS 416.350(2); and the voidability of transfers made with intent to hinder or prevent estate recovery, ORS 411.630(2). *Id*. at 686-87.

As to each Oregon statute, the court rejected DHS's argument because there was no connection between the legal standard in the amended rules and the legal standard in the statute. *Id*. at 690-94. For example, as to ORS 416.350(2), the court explained:

> "Again, we find broad differences between the legal standards contained in that statute and the amended rules. As the department concedes, that statute does not apply to transfers made by someone before they either became a Medicaid recipient or at least applied for such aid, because the statute applies only to transfers made 'by recipients of such aid.' The rule amendments, on the other hand, expressly apply to transfers made before someone applies for Medicaid—up to five years before that time. The statute makes voidable only those transfers made without adequate consideration. The rule amendments on their face apply without regard to the amount of consideration. Thus, the amended rules again would allow the department to recover in situations where the statute would not. The rule amendments depart from the statutory legal standard."

*Id*. at 693.

Defendants argue that *Nay II* is controlling here, including asserting that it "unequivocally" decided the present issue in their favor. We disagree. The *Nay II* court never considered the issue presently before us. To the contrary, the *Nay II* court expressly "assume[d] for purposes of argument" that ORS 416.350(2) and ORS 411.630(2) "create the sort of interest in property at death described by the definition of 'estate' in ORS 416.350(6)(a)." *Id*. at 692-93. That is, the court assumed without deciding that, if DHS's rules tracked the set-aside limitations in ORS 416.350(2) and ORS 411.630(2), then assets for which a pre-death transfer had been set aside *would* be part of the Medicaid recipient's

"estate." Because the court definitely did not address the issue before us, *Nay II* is of minimal relevance.

Even so, the *Nay II* court's description of the set-aside statutes is worth noting. In addition to recognizing early in the opinion that ORS 411.620(2) is the source of "[t]he general authority to set aside [certain property] transfers" for estate-recovery purposes, *id*. at 673, the following is how the court summarized why none of the cited Oregon statutes gave DHS authority to make the rule amendments that it did:

> "The legislature did not grant the department generalized authority to determine what transactions should be set aside. Instead, *the legislature reserved that task to itself.* It defined 'estate' to include property interests that the Medicaid recipient held at the time of death. It also *authorized the department to recover certain transfers—transfers made without adequate consideration by a Medicaid recipient, and transfers made with intent to hinder or prevent estate recovery.*

> "The rule amendments at issue here show no connection to those limitations. \*\*\* The rule amendments instead allow the department to recover transfers based on an unrelated set of legal criteria. Because the amended rules departed from a legal standard expressed or implied in the particular law being administered, the department exceeded its authority in adopting them, and they are invalid under ORS 183.400(4)(b)."

*Id*. at 694 (internal quotation marks and citation omitted; emphases added).

Finally, we note that, in *Nay II*, the Supreme Court vacated the portion of our decision in *Nay I* that concluded that DHS's rule amendments were inconsistent with federal law. *Id.* at 695. The court agreed with DHS that our analysis should have ended when we concluded (correctly) that the rule amendments exceeded DHS's authority under Oregon law. *Id*. Consequently, our federal-law analysis in *Nay I* is no longer "'on the books,' so to speak," and is not precedential. *Association of Oregon Corrections Employees v. DOC*, 266 Or App 496, 511, 337 P3d 998 (2014). We emphasize that

fact because, despite recognizing the vacatur, defendants repeatedly cite *Nay I* as authority for their federal-law arguments, including as "unequivocal" authority on the "statutory limits of DHS's Medicaid estate recovery under federal *** law." We did not consider the present issue in *Nay I* any more than the Supreme Court did in *Nay II*. In any event, our federal-law analysis in *Nay I* has been vacated and is not authority on anything.

We next consider defendants' arguments regarding federal preemption. "The power of Congress to preempt state law arises from the Supremacy Clause of Article VI of the United States Constitution, which provides that the laws of the United States are 'the supreme law of the land,' and that the state courts 'shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.'" *Willis v. Winters*, 350 Or 299, 307-08, 253 P3d 1058 (2011), *cert den*, 565 US 1110 (2012). Federal law preempts state law in three circumstances: "(1) when the federal law expressly provides for preemption; (2) when a congressional statutory scheme so completely occupies the field with respect to some subject matter that an intent to exclude the states from legislating in that subject area is implied; and (3) when an intent to preempt is implied from an actual conflict between state and federal law." *Id.* at 308. "The third type of preemption exists not only when it is physically impossible to comply with both the state and federal law, but when 'under the circumstances of the particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 US 52, 67-68, 61 S Ct 399, 85 L Ed 581 (1941)).

Defendants' arguments regarding federal preemption are intermingled with their other arguments. Primarily, defendants argue that an actual conflict exists between the Oregon statutes and federal law, in that the Oregon statutes stand as an obstacle to the accomplishment and execution of Congress's full purposes and objectives. Specifically, they argue that allowing estate recovery against an asset after setting aside a pre-death transfer pursuant to ORS 411.620(2), ORS 411.630(2), and ORS 416.350(2) would

frustrate Congress's purposes and objectives with respect to the definition of "estate" in 42 USC section 1396p(b)(4)(B). Defendants have offered no meaningful argument as to why the setting aside of a pre-death transfer can never under any circumstances turn back the clock *legally*, allowing the subject asset to be treated as one in which the decedent had legal title or interest at the time of death. They simply insist that it cannot, which we do not find persuasive, as we have already explained.

The additional framing of defendants' arguments as preemption arguments does not make them more persuasive. That is particularly so because the state and federal definitions of "estate" are "parallel." *Nay II*, 360 Or at 673. If we agreed with defendants' position, then ORS 416.350(6)(a) itself would preclude DHS from recovering out of an asset that was successfully—albeit improperly—transferred before death, without any need to reach the federal statute or consider issues of federal preemption. *See Etter v. Dept. of Rev.*, 360 Or 46, 52, 377 P3d 561 (2016) ("In general, we consider whether actions are consistent with state law before examining consistency with federal law."). In any event, we have considered all of defendants' preemption arguments related to 42 USC section 1396p(b)(4)(B). Given the purposes and intended effects of section 1396p(b)(4)(B) and the purposes and intended effects of the Oregon statutes, we disagree that the Oregon statutes create an obstacle to the accomplishment and execution of Congress's full purposes and objectives as to federal Medicaid law generally or as to section 1396p(b)(4)(B) particularly. *See Winters*, 350 Or at 309 (explaining methodology to resolve obstacle-preemption questions).[1]

---

[1] In their opening brief, defendants argue for obstacle preemption, which is what they argued in the trial court. In their reply brief, they argue for the first time for express preemption and field preemption as well. *See Winters*, 350 Or at 308 (describing the different types of preemption). We generally will not consider an issue raised for the first time in the reply brief. *Federal National Mortgage Association v. Goodrich*, 275 Or App 77, 86, 364 P3d 696 (2015). In any event, defendants largely recast the same arguments. They do not identify an express preemption provision in federal law, nor do they develop an argument that federal law so completely occupies the field with respect to Medicaid or Medicaid estate recovery that states are excluded from any legislation that affects what is included in the "estate."

To the extent that defendants also argue that the Oregon statutes are preempted by 42 USC section 1396 p(c)(2), we disagree there as well. Section 1396p(c)(2) provides that a person "shall not be ineligible for medical assistance" through Medicaid based on having transferred title to a home to the person's spouse during the look-back period for asset transfers described in section 1396p(c)(1). The fact that recent transfer of home ownership to one's spouse does not render one *ineligible* to receive Medicaid benefits has little or nothing to do with whether states may provide for the set aside of certain asset transfers after the deaths of the Medicaid recipient and their spouse—*see* 42 USC § 1396p(b)(2)); ORS 416.350(2)—in connection with Medicaid estate recovery. Indeed, as DHS points out, if Congress had intended that a Medicaid recipient's home be freely transferrable at any time and thus made unavailable for estate recovery, it could have easily said so. It also presumably would have given the same benefit to unmarried Medicaid recipients. There is no apparent reason that married recipients would be allowed to avoid estate recovery and pass on the family home to nondependent adult children, by passing it through a spouse, when unmarried recipients cannot do so. *See* HR Rep No 100-105(II), 100th Cong, 1st Sess (1988), *reprinted in* 1988 USCCAN 857, 896 ("Medicaid—an entitlement program for the poor—should not facilitate the transfer of accumulated wealth from nursing home patients to their non-dependent children.").

Finally, defendants cite out-of-state cases in support of their arguments. They rely primarily on *Barg*, 752 NW 2d at 52, which they describe as the "leading case" and the "correct rule." *Barg* in turn discusses most of the other out-of-state cases that defendants cite. We agree with DHS that *Barg* is distinguishable. In that case, the Minnesota Supreme Court held that federal law preempted a Minnesota law that broadly allowed recovery to be pursued against a Medicaid recipient's surviving spouse's estate up to "the value of the assets of the estate that were marital property or jointly owned property *at any time during the marriage.*" *Id*. at 61 (quoting Minnesota statute (emphasis in *Barg*)). Not only was that provision much broader than the Oregon statutes at issue in the present case, but *Barg* involved "no

allegation" that the Medicaid recipient's transfer of assets to her husband was "improper or fraudulent." *Id.* at 57. Nothing in *Barg* persuades us that the Oregon statues allowing for judicial set-aside of property transfers in certain narrow circumstances are inconsistent with federal law. The same is true of the other out-of-state cases discussed in *Barg* and cited by defendants.

In the end, we are simply unpersuaded that, when a Medicaid recipient dies, federal Medicaid law requires any and all pre-death transfers to be treated as valid, even if a transfer lacked consideration or was specifically intended to hinder or prevent estate recovery. Defendants argue that, if the trial court's judgment is upheld, it will "allow voiding and setting aside of *any* predeath asset transfers, *not just a home*, between Oregon spouses, made for any reason, *at any time* during a marriage, *not just five years before* a Medicaid application." (Emphases in original.) That is not so, because, for purposes of recovering properly paid Medicaid benefits, the statutes allow a court to set aside a transfer only in two narrowly prescribed circumstances. One is when a person receiving Medicaid benefits transfers property without adequate consideration. ORS 416.350(2); *see Nay II*, 360 Or at 693 ("As the department concedes, [ORS 416.350(2)] does not apply to transfers made by someone before they either became a Medicaid recipient or at least applied for such aid,[2] because the statute applies only to transfers made 'by recipients of such aid.'"). The other is when a person transfers property with the specific intent to hinder or prevent Medicaid estate recovery. ORS 411.630(2)(b); ORS 411.620(2).[3]

---

[2] As a demonstration of the difference between time as a factual matter and time as a legal matter, the *effective date* of Medicaid benefits will often be the application date, rather than the approval date. *See* OAR 461-180-0090. An effective date is essentially a legal mechanism to turn back the clock. *See Fidelity Financial Services, Inc. v. Fink*, 522 US 211, 216, 118 S Ct 651, 139 L Ed 2d 571 (1998) (acknowledging the difference between "time and action in the real world" and circumstances when "the clock is being turned back in some legal universe").

[3] We are similarly unpersuaded by defendants' assertion that affirming the judgment means that "any attorney advising a married or unmarried Oregonian to lawfully convey property to a spouse, or any other person, for any reason would violate ORS 411.630(3)," which provides that "[a] person may not knowingly aid or abet any person to violate any provision of this section." To the extent that is meant as a statutory-context argument, we reiterate that transfers may be set

In sum, the trial court did not err when it set aside the decedent's April 2016 transfer of her interest in the Property to her husband and awarded DHS an amount equal to half of the Property's value at the time of the decedent's death.[4] Accordingly, we affirm the judgment.

Affirmed.

_____

aside only in very limited circumstances and note that ORS 411.630(3) is limited to knowing aiding and abetting.

[4] Because we affirm the judgment based on the set-aside provisions in ORS 411.620(2), ORS 411.630(2), and ORS 416.350(2), we do not address two alternative legal theories that DHS argued to the trial court.